505 So.2d 66 (1987)
Lois Garrett GIBSON
v.
Frank A. BURNS
No. CA-6295.
Court of Appeal of Louisiana, Fourth Circuit.
March 16, 1987.
Lamar M. Richardson, Jr., Murray, Braden, Gonzalez & Richardson, Mandeville, for appellant.
John J. Burke, Simoneaux & Simoneaux, Metairie, for intervenor/appellee.
Before SCHOTT, KLEES and LOBRANO, JJ.
LOBRANO, Judge.
The primary issue presented for our review is whether a second mortgage holder has a right to object to the excessiveness of a stipulated attorney fee between the first mortgage holder and the debtor where the debtor himself does not object.
The trial court upheld the second mortgagee's complaint, and reduced the agreed upon attorney fees as being excessive.
The facts of this case are well outlined in the trial court's reasons for judgment, and are as follows:
"The undisputed material facts are that on September 7, 1982, defendant, Frank A. Burns, purchased immovable property from plaintiff, Lois Gibson, and executed in her favor a vendor's lien, first mortgage and a promissory note in the sum of $47,000.00, together with a confession of judgment and stipulated attorney fees *67 of 25% on any sums due in the event of suit or collection. The note contained the following language:
`In the event it becomes necessary to place this note, or any renewal thereof, in the hands of an attorney for collection or suit I agree to pay twenty-five (25%) per cent of the amount of this note as attorney fees, which fees are agreed to be part of the principal obligation of this note.'
On August 21, 1984, Burns executed a second mortgage, vendor's lien and promissory, [sic] on the same property, in favor of Columbia Homestead Association in the sum of $50,285.00.
On June 5, 1985, Gibson instituted this action for executory process against Burns, who was delinquent in payment, requesting judicial seizure and sale of the property plus 25% attorney fees on the unpaid balance. Burns secured interim protection from the bankruptcy court, but the case was remanded to the state court.
The Civil Sheriff conducted a judicial auction on January 9, 1986, at which time Columbia purchased the property for $90,000.00. Columbia agreed to liquidate the Burns first mortgage, but objected to paying the fixed 25% attorney fees provided for in the note, which amounted to $11,727.00. They aver that they are only liable for reasonable attorney fees based on time, labor and fees customarily charged based on experience, reputation and ability, which amounts to $6,185.50.
On February 6, 1986, Columbia intervened for a judicial determination of this specific issue, alleging that LA.C.C. Art. 2000 is unconstitutional, that only the Supreme Court can regulate the practice of law and that attorney fees must be reasonable, regardless of the parties' agreement. Gibson filed an exception of no right of action to the intervention."

EXCEPTION OF NO RIGHT OF ACTION
Gibson excepted to the intervention of Columbia asserting that Columbia has no interest or right to contest the attorney fees agreed upon by Gibson and Burns.
Article 1091 of the Code of Civil Procedure provides as follows:
"A third person having an interest therein may intervene in a pending action to enforce a right related to or connected with the object of the pending action against one or more of the parties thereto by:
(1) Joining with plaintiff in demanding the same or similar relief against the defendant;
(2) Uniting with defendant in resisting the plaintiff's demand; or
(3) Opposing both plaintiff and defendant."
An inferior or superior mortgage holder may intervene in a proceeding where property subject to his mortgage is seized and thereby assert the validity of his claim at any time prior to the distribution of the proceeds of the sheriff's sale. La.C.C.Pro. Art. 1092. The intervener does not admit the validity of the seizing creditor's mortgage, nor is he estopped from contesting its validity. Id.
This Court, in the case of In Re Tutorship of Werling, 459 So.2d 758 (La.App. 4th Cir.1984), described the exception of no right of action as follows:
"Except as otherwise provided by law, an action can be brought only by a person having a real and actual interest which is asserted. La.C.C.P. Art. 681. An exception of no right of action under La.C. C.P. Art. 927(5) raises the issue of whether the person has an interest in the subject matter of the proceedings. Bank of New Orleans and Trust Co. v. Lambert, 409 So.2d 294 (La.App. 1st Cir.1981), writ denied 413 So.2d 494 (La.1982). It challenges the plaintiff's interest in the subject matter or his legal capacity to proceed with the suit. Marquis v. Cantu, 371 So.2d 1292 (La.App. 3rd Cir.1979). The exception questions whether a remedy afforded by law can be invoked by the particular plaintiff; it relates specifically to the individual person." Id. at 762.

Gibson urges that because Columbia was not a party to the contractual agreement between her and Burns, the debtor, they *68 have no standing or right to bring this action. We disagree.
Columbia, as a second mortgage holder, certainly has the right to contest the validity of the first mortgage. They also have the right to question the amount actually owed on the underlying debt, as well as the costs involved in the foreclosure. Any variance in these items would certainly affect their position as second mortgagee, especially where they purchased the property to protect their security interests. We therefore cannot say they have no real interest in the amount of attorney fees Burns is ultimately required to pay. As the trial judge stated:
"Mortgages ex post the first mortgage, can only insure their investment by acquiring the preceding mortgage at a judicial sale. The purchase price must be sufficient to liquidate all existing valid encumbrances and costs. Thus the purchaser possesses the inherent authority to reasonably question, inquire and challenge improper liabilities and debts."
We agree with the trial court that Columbia has standing to intervene.

EXCESSIVE ATTORNEY FEES
Having concluded that Columbia is entitled to intervene in these proceedings, we now turn to the question of whether the judiciary can inquire into the alleged excessiveness of attorney fees.
Gibson argues that Civil Code Article 2000 (the successor of Article 1935, as amended by Act 483 of 1983) precludes judicial inquiry into an attorney fee agreed upon by an obligor and obligee.
La. Civil Code Article 2000 provides:
"When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of twelve percent per annum. The obligee may recover these damages without having to prove any loss, and whatever loss he may have suffered he can recover no more. If the parties, by written contract, have expressly agreed that the obligor shall also be liable for the obligee's attorney fees in a fixed or determinable amount, the obligee is entitled to that amount as well."
Section two of Act 1985, No. 137 further provided that Article 2000 was to be applied retrospectively and prospectively.
The amendment to Civil Code Article 1935 (now Article 2000) was an attempt to legislatively overrule the Louisiana Supreme Court decision of Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La. 1982). In that case a debtor contested the excessiveness of the fixed attorney fees in a promissory note and mortgage. Our Supreme Court, basing its decision on the constitutional authority of the judiciary to regulate the practice of law, held that, notwithstanding the percentage attorney fees provided in the note, "... courts may inquire into the reasonableness of the fee." Id. at 219. The Court, in commenting upon its duty to regulate the legal profession, stated:
"We view the Code of Professional Responsibility as being the most exacting of laws established for the public good. Hence, the prohibition against a lawyer collecting a `clearly excessive fee' cannot be abrogated by a provision in a note fixing the amount of attorney fees...." Ibid

We are of the opinion that Article 2000 cannot preclude judicial review of a claim of excessive attorney fees. We are not unmindful of the holding of our Brethren of the Fifth Circuit in Bank of St. Charles v. Fire Protection Systems, Inc., 497 So.2d 25 (La.App. 5th Cir.1986) wherein they held that Article 2000 permitted the creditor to collect the full amount of the fixed attorney fees. However, while the instant case was under submission, the Supreme Court decided Central Progressive Bank v. Sherry Wyatt Bradley, et al, 502 So.2d 1017 (La.1987) which clearly supports the position we take herein. We therefore conclude that the legislature cannot invade the constitutional authority of the judiciary to regulate the practice of law, which includes *69 the reasonableness of fees. See, DR 2-106, Code of Professional Responsibility.

We are of the further opinion, however, that review of purportedly excessive attorney fees should be tempered with judicial restraint. The courts should not be in the business of setting fees. Article 2000 authorizes a valid contract for attorney fees and the courts should not interfere with that contract unless there is a "clearly excessive fee" involved. The term "clearly excessive" used by the Court in Leenerts Farms, supra, was taken from the provisions of DR 2-106 of the Code of Professional Responsibility as they existed at that time. We interpret that term to mean so grossly out of proportion with the fees charged for similar services by other attorneys in the locale as to constitute an unquestionable abuse of the attorney's professional responsibilities to the public. For example, the hypothetical situation cited by the trial court of the $1,000,000.00 foreclosure with a 25% stipulated fee might fall in this category, absent unusual circumstances to justify a $250,000.00 legal fee.
In the instant case, the trial court's total attorney fee award is $7,109.90. This is based on the submitted time records of Gibson's foreclosure attorney, and the billings of the attorney associated in the bankruptcy proceedings. The stipulated fee of 25% would have resulted in an award of $11,727.00.
The trial court used Gibson's testimony of $100.00 per hour as his normal hourly rate charge, although presumably other lawyers may charge $125.00 or even $150.00 per hour for similar work. Considering the time expended in the foreclosure, the bankruptcy proceedings, and these proceedings (enforcement of attorney fees), we do not believe the 25% stipulated fees are so "clearly excessive" as to warrant judicial interference.
For the above and foregoing reasons, we reverse the judgment below, and grant an attorney fee award of $11,727.00 or 25% of the amount owed, together with all costs of these proceedings.

REVERSED AND RENDERED.