GOTHARD, Judge.
This is a suit on a note. From summary judgment in favor of the plaintiff, a defendant, John B. Donnes, II, has taken this devolutive appeal. The second obligor on the note, Pontchartrain Leasing Co., Inc. did not appeal and the judgment is final as to that debtor.
The judgment cast Donnes and Pontchartrain for the balance of the loan, $6,439.63, together with accrued but unpaid interest of $217.00, plus interest at 15% per annum from May 21, 1986 until paid, plus 25% of principal and interest as attorney’s fees and all costs. The only issue before the *263 court is the amount of the award of attorney’s fees.[1]
First National Bank of Commerce (FNBC) filed suit against Pontchartrain and Donnes for the balance on a promissory note which stipulated interest of 15% per annum and, in the event of default, attorney’s fees as follows:
... The parties hereto bind themselves to pay the fees of any attorney at law who may be employed to recover the amount hereof, or any part hereof, in principal or interest, or to protect any security herefor or the interest of the holder hereof, or to compromise or to take any other action with regard hereto, which fees are hereby fixed at twenty-five percent of the amount then owing hereon or sought to be collected, protected, or preserved.
The balance of the note was $6,439.63 and 25% of that amount plus accrued interest amounts to about $1,700.
The defendants answered with a general denial, after which FNBC filed a motion for summary judgment. The defendants filed no counter affidavits or memoranda and were absent and unrepresented at the hearing. Accordingly, judgment was rendered and signed on September 3, 1986. This appeal by John Donnes, II followed.
The issue of whether or not a court may inquire into the reasonableness of an attorney’s fee, even though stipulated to by the parties, was recently settled by the Supreme Court in Central Progressive Bank v. Bradley, 502 So.2d 1017 (La.1987), as follows:
La.Civ.Code Art. 2000 attempts to regulate attorney fees by stating that “[i]f the parties, by written contract, have expressly agreed that the obligor shall also be liable for the obligee’s attorney fees in a fixed or determinable amount, the obligee is entitled to that amount as well.” La. Const, art. 5, sec. 5(B) provides that the supreme court has exclusive original jurisdiction of disciplinary proceedings against a member of the bar. The supreme court has a duty to assert that authority to regulate the practice of law. We held in Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982), that the prohibition against a lawyer accepting a “clearly excessive fee” found in Disciplinary Rule 2-106[2] of the Code of Professional Responsibility, cannot be abrogated by a provision in a note fixing the amount of attorney fees as a percentage of the amount to be collected. This prohibition likewise cannot be abrogated by a law fixing the amount of attorney fees as a percentage of the amount to be collected. City of Baton Rouge v. Stauffer Chemical Company, 500 So.2d 397 (La., 1987). See also Saucier v. Hayes Dairy Products, Inc. 373 So.2d 102 (La.1979). Since art. 2000 attempts to regulate attorney fees, it will not be enforced when the attorney fees fixed by the parties are excessive and unreasonable. Notwith *264 standing art. 2000, the courts may inquire into the reasonableness of such a fee.[3]
The appellant argues that the attorney for FNBC has made no showing that the work required in obtaining judgment merited a fee of 25%. The appellee quotes Gibson v. Burns, 505 So.2d 66 (La.App. 4th Cir.1987) for the principle of judicial restraint, as follows at 69:
We are of the further opinion, however, that review of purportedly excessive attorney fees should be tempered with judicial restraint. The courts should not be in the business of setting fees. Article 2000 authorizes a valid contract for attorney fees and the courts should not interfere with that contract unless there is a “clearly excessive fee” involved.... We interpret that term to mean so grossly out of proportion with the fees charged for similar services by other attorneys in the locale as to constitute an unquestionable abuse of the attorney’s professional responsibilities to the public....
The court in Gibson affirmed a stipulated fee of 25% in a foreclosure and bankruptcy procedure. The appellee here argues that his work in obtaining judgment for FNBC exceeded that performed in the Gibson case.
We have reviewed several recent cases as to those courts’ determination of reasonableness. In Martin v. Champagne, 507 So.2d 322 (La. App. 3d Cir.1987) the court found a fee of $20,765.45 on a balance of $52,379.78 to be excessive on its face, and remanded for the trial court to examine the reasonableness of the 25% stipulated fee. In Gibson v. Bums, supra, the court based its determination that a 25% fee was not excessive in light of the time expended as shown in the attorney’s time sheets and his hourly rate, which was deemed less than others might charge. In Scott v. Noel, 506 So.2d 1313 (La.App. 2nd Cir.1987), the court lowered the fee from 25% to 15% on a $65,928.00 judgment, stating that, “... we conclude that the relatively few pleadings filed, the limited discovery required and the one day trial involving few witnesses are factors which support defendant’s contention that 25% of the amount of the award results in an excessive attorney fee award.” The court in City Bank And Trust v. Hardage Corp., 449 So.2d 1181 (La.App. 2nd Cir.1984), reduced the attorney’s fee from a minimum of $12,500 to $1,500, where the judgment was obtained by default, again holding that the fee was excessive for the work involved. In Graham v. Sequoya Corp., 478 So.2d 1223 (La.1985) the case was remanded for the trial court to set a reasonable fee, where the Supreme Court held that 25% was clearly excessive because the case had not gone to trial.
The appellee here defends his fee on the basis of work performed, as stated in his brief, “filing suit, reviewing answers, filing an affidavit and supporting memorandum, filing a Motion for Summary Judgment and preparing a final judgment.” He notes also that if the judgment is not paid voluntarily he will be required to seek to collect the judgment. Our examination of the pleadings indicates that no complicated drafting of pleadings was involved, as the matter was a routine and uncomplicated one, requiring a minimum amount of a knowledgeable attorney’s time.
The cases reviewed above involved judgments much larger than the one before us. However, the actual time expended and the complexity of the case appeared to be the dominant factors in the court’s determination of reasonableness or excessiveness. Where the cases did not go to trial, as in City Bank And Trust v. Hardage Corp., and Graham v. Sequoya Corp., supra, those courts deemed a stipulated fee of 25% to be excessive. Neither court gave consideration to work that might be required in the future to execute on the judgment. We find the approximate fee of $1,700 in the case before us, as per the stipulated fee of 25%, to be excessive for the work involved and reduce to $1,000.
Accordingly, for the reasons assigned above the judgment appealed from is re *265 vised to fix the attorney’s fees awarded in favor of First National Bank of Commerce and against John B. Donnes, II at $1,000, with costs to be borne equally by both parties.
JUDGMENT REVISED, AND AS REVISED, AFFIRMED.

. The appellant had raised the issue of whether interest should have been awarded on the principal and accrued interest. As the appellee agrees that the 15% applies only to principal, that issue is moot.

. DR 2-106. Fees for Legal Services.
(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.
(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:
(1)The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
(3) The fee customarily charged in the locality for similar legal services.
(4) The amount involved and the results obtained.
(5) The time limitations imposed by the client or by the circumstances.
(6) The nature and length of the professional relationship with the client.
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
(8) Whether the fee is fixed or contingent....

. For a history of this issue see "Comment,” 47 La.L.Rev. 153 (1986).