522 So.2d 183 (1988)
Vincent J. ROLLO and Frances Antoinette Dottolo Rollo
v.
Albert J. LOUSTEAU, III and Cynthia Swenson Lousteau.
No. 87-CA-681.
Court of Appeal of Louisiana, Fifth Circuit.
March 14, 1988.
Rehearing Denied April 15, 1988.
*184 John M. Crum, Jr., Thomas F. Daley, LaPlace, for plaintiffs/appellees.
Benjamin B. Blanchet, Guy E. Wall, Steven W. Copley, Gordon, Arata, McCollam, Stuart & Duplantis, New Orleans, for defendants/appellants.
Before BOWES, GAUDIN and WICKER, JJ.
WICKER, Judge.
First Financial of Louisiana Savings and Loan Association, intervenor in this foreclosure action, appeals the award of attorney's fees. We affirm as amended.
The original plaintiffs, Vincent J. and Frances Antoinette Dottolo Rollo (ROLLO), were the holders of a first mortgage on property owned by the defendants, Albert J. Lousteau, III and his wife, Cynthia Swenson Lousteau (LOUSTEAU). First Financial was the holder of a second mortgage on this same immovable property. Lousteau defaulted on the payment of the mortgage on February 1, 1987; and Rollo, through his attorney, brought executory proceedings to have the property seized and sold. First Financial intervened in the foreclosure proceeding to oppose the award of excessive attorney's fees.
Lousteau owed Rollo $155,843.92, and the costs involved in the sheriff's sale were $5,390.00. The trial judge awarded $30,866.18[1] in attorney's fees to Rollo, with the result that there was no money left over from the $193,000.00 sale to pay the $136,505.53 that Lousteau owed First Financial.
The only issue is the reasonableness of the attorney fee award. First Financial argues that the trial judge erred in failing to apply the appropriate guidelines for reasonableness; in relying on testimony of unexplained, unrecorded, and undocumented attorney time; in considering the time spent in maximizing the fee; and in considering attorney time expended prior to a default in the obligation.
The promissory note stipulated that
... in the event that this note or any installment thereof or any portion of any installment thereof, or the interest thereon, is not paid when due and according to its tenor, is placed in the hands of an attorney at law for collection, or is sued on, twenty-five per cent (25%) additional on the amount of principal and interest due as attorney's fees.
The law is clear, however, that a stipulation for attorney's fees in a note does not foreclose inquiry into the reasonableness of those fees. Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982); Oubre v. Bank of St. Charles and Trust Company, 499 So.2d 602 (La.App. 5th Cir.1987), writ den. 503 So.2d 20 (La.1987). The Code of Professional Responsibility, DR2-106(B), provides that a "fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee." The Code enumerates the factors which determine reasonableness:

*185 (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
(3) The fee customarily charged in the locality for similar legal services.
(4) The amount involved and the results obtained.
(5) The time limitations imposed by the client or by the circumstances.
(6) The nature and length of the professional relationship with the client.
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
(8) Whether the fee is fixed or contingent.
Code of Professional Responsibility, Disciplinary Rule 2-106(B).
The record contains no reasons for judgment, so we do not know how the trial judge applied the factors enumerated in DR2-106(B). We are empowered to review the record ourselves to determine reasonableness. Oubre v. Bank of St. Charles and Trust Co., supra.
To enforce Lousteau's obligation, Rollo's attorneys filed a petition for executory process and a rule to release funds from the sheriff's sale. The attorneys were required to obtain a judgment lifting the automatic stay in bankruptcy necessitated by Lousteau's filing for bankruptcy twelve days after Rollo filed foreclosure proceedings. Two hearings were required for the rules relating to the distribution of funds. All this is reflected in the record of the proceedings below. In addition, Thomas F. Daley, one of Rollo's attorneys, introduced into evidence his itemized statement for fees and costs, reflecting forty-five hours expended in reviewing the file, drafting pleadings in this and the bankruptcy proceeding, travel time to and from Edgard and New Orleans, telephone calls and conferences, correspondence, a hearing at the bankruptcy court, attendance at the foreclosure sale, and trial preparation billed at an hourly rate of $85.00. The total itemized statement for fees is $3,825.00, and an additional $370.00 in costs is claimed.
The only other evidence of the value of the legal services rendered to Rollo in this matter is contained in the testimony of Rollo and his attorneys, Daley and John Crum, his law partner and district attorney for St. John the Baptist Parish.
VINCENT ROLLO
Rollo retained Crum during the summer of 1986 to foreclose on the mortgage, if necessary, for the twenty-five percent stipulated fee. Crum brought Daley in to assist him; and Rollo and his attorneys spent one hundred to one hundred twenty hours discussing the case, about forty of them prior to the initiation of legal proceedings. The case was complicated by Lousteau's bankruptcy and the presence of First Financial's second mortgage. Many of the meetings took place before Lousteau actually missed a payment because Rollo was concerned about Lousteau's financial problems and First Financial's suit against Lousteau. Rollo and his attorneys met two or three times a week during 1986 for at least an hour each time. No notes or calendar entries were made evidencing these meetings. Had there been no foreclosure, Rollo and his attorneys would have worked something out with regard to the fee.
GUY WALL
Wall, the attorney for First Financial, stipulated that his client prayed for attorney's fees of twenty-five percent in First Financial's suit against Lousteau.
TOM DALEY
Daley's itemized statement was prepared as a summary of his calendar. Crum brought him into the case when Lousteau missed a payment and requested his assistance in preparing the foreclosure documents. The statement does not reflect consultations with Crum and Rollo but only office and court time. He first met with Crum and Rollo in the summer of 1986 since First Financial had begun proceedings against Lousteau and Rollo was concerned about his security. He could not recall a specific discussion about the fee; *186 but his expectation was that there would be no fee if there had been no foreclosure. He recalled only two meetings with Rollo prior to Lousteau's missed payment. He estimated an additional fifteen or twenty hours of time spent on the case in addition to what was itemized in his statement.
JOHN M. CRUM, JR.
Crum, an attorney since 1972, was the district attorney and practiced civil law to some extent. His basic involvement in the case was that he and Rollo were friends and had had an attorney-client relationship since 1972. He felt that Lousteau had jeopardized Rollo's security by allowing First Financial to file proceedings against him and by filing for bankruptcy; and he considered this a default even before Lousteau missed a payment on his note.[2] Rollo was worried about his security interest and discussed it with Crum two or three times a week beginning in the summer of 1986. Crum felt part of his job was maintaining the sanity of his client. The basic fee arrangement was for the twenty-five percent stipulated in the note, but the fee to be earned in the event there was no foreclosure was never discussed. He felt sure that foreclosure would ultimately be necessary. Since he worked on this case on a percentage basis, he did not keep time records. He recalled spending in excess of one hundred hours on the case "with Mr. Rollo specifically on this either talking to him in court somewhere, going somewhere, doing something about it." His normal hourly rate is $85.00.
The evidence shows that Daley billed $3,825.00 in fees and expended an additional fifteen or twenty hours at $85.00 per hour. This supports an hourly fee of $5,100.00, plus costs of $370.00. Crum spent a maximum of one hundred to one hundred twenty hours working on the case after the default. Using his customary hourly rate of $85.00, this supports a fee of $8,500.00. While written records and time sheets would have been preferable proof of the time expended by the attorneys on this case, we certainly cannot disregard the unrebutted testimony of these attorneys which was apparently accepted by the trial court.
In applying the provisions of DR2-106(B) to the evidence, we find the following:
(1) The attorneys spent one hundred sixty hours, most of it undocumented, working on this case, which was neither novel nor especially difficult.
(2) There was no evidence that handling this case precluded other work by the attorneys. In fact, it is obvious that Crum still maintained his position as district attorney for the parish.
(3) The evidence supported a finding that $85.00 per hour is customary in St. John the Baptist Parish and that First Financial, in filing suit against Lousteau, prayed for an award of twenty-five percent of the amount owed.
(4) The amount of money involved was considerable and the results obtained were excellent. Rollo was able to recover all that he was owed, despite Lousteau's bankruptcy proceedings and First Financial's suit against Lousteau.
(5) No particular time limitations are indicated by the record or the testimony.
(6) Crum had a long-standing professional relationship with Rollo, but Daley had no prior professional relationship.
(7) There is little evidence of Daley's experience, reputation, or ability one way or the other. Crum apparently practiced civil law only part time.
(8) The fee was a contingent one.
*187 This evidence does not support the award of $30,866.18 in attorney's fees. The total amount awarded should have been $13,600.00 in fees and $370.00 costs, and we amend the judgment to reflect this finding. We assess the costs of this appeal equally between First Financial and Rollo.
REVISED AND, AS REVISED, AFFIRMED.
NOTES
[1] This is 19.8% of the principal and interest due.
[2] This appears to be a legitimate interpretation of the first mortgage contract between Rollo and Lousteau, which reads:

.... The property conveyed shall not be sold, alienated, or encumbered to the prejudice of this mortgage.... IF BUYER [Lousteau] shall become insolvent, or apply to a bankruptcy court to be adjudged a voluntary bankrupt, or proceedings be instituted to have BUYER adjudged an involuntary bankrupt, or proceedings be taken against BUYER looking to the appointment of a receiver or syndic, or any proceedings be instituted for the seizure or sale of the property herein mortgaged by judicial process, or in case BUYER should fail to pay the note ... promptly when due ... all the indebtedness shall ipso facto, and without any demand or putting in default, become immediately due and exibible....