CHEHARDY, Chief Judge.
This appeal emanates from a suit for executory process and the resulting judicial sale of the mortgaged property, in which a dispute arose between the holder of the second-ranked mortgage and the attorneys for the holder of first-ranked mortgage over the amount of the attorney’s fees due under the first mortgage. The second mortgage holder has appealed dismissal of its claim that the first mortgage holder’s attorneys are entitled to be paid only the reasonable value of the services rendered rather than the higher, percentage-based fee stipulated in the first mortgage.
This suit has been consolidated on appeal with a later suit filed by the second mortgage holder directly against the attorneys for the first mortgage holder, Master Automotive Warehouse, Inc. v. Amato, 549 So.2d 321, in which judgment also has been rendered this day.
The following facts underlie these suits:
On September 17, 1984, Maria Suarez Longo (now known as Maria Suarez Hunt-singer) and Emanuel Longo executed a promissory note payable to Nelda Toups Shieffler Esteve in the amount of $110,000, secured by a mortgage on the Longos’ home. The act of mortgage contained a confession of judgment and other provisions for executory process in the event of nonpayment. Both the promissory note and the mortgage provided for attorney’s fees of 25% of the principal and interest due on the note should it become necessary to employ an attorney to enforce collection of the debt.
On December 9, 1985, the Longos signed a promissory note in the amount of $175,-000, secured by a collateral mortgage on their home, for their purchase of a business from Master Automotive Warehouse, Inc. That note and mortgage also contained provisions authorizing use of executory process in the event of default. The Esteve mortgage was recorded prior to the Master Automotive mortgage.
PROCEDURAL HISTORY
On June 30, 1987, Mrs. Esteve filed suit for executory process, seeking foreclosure of the mortgage in her favor. She alleged nonpayment of the note since March 1, 1987, asserting the principal and interest due on the note were $105,704.79, plus attorney’s fees of 25% of that amount. She prayed for seizure and sale of the property without appraisement.
On July 20, 1987, Master Automotive intervened in Esteve’s suit with its own petition for executory process. Master Automotive alleged nonpayment of its note since March 1, 1987, asserting the principal and interest due thereon were $157,080, plus attorney’s fees of 15% of that amount. Master sought recognition of its rights under the collateral mortgage, praying for payment out of the proceeds of the sale “subject only to the prior mortgage in favor of Nelda Toups Schieffler Esteve in the amount of $110,000.00” and for recognition of its right to a deficiency judgment against the debtors in the event the proceeds of the sheriff’s sale were insufficient to satisfy the indebtedness. An order in favor of the intervenor as prayed was signed on July 21, 1987.
*318 On August 17, 1987, the order recognizing the intervention was amended, to reflect that “intervenor be paid the amount of its claim subject only to the prior mortgage in favor of Nelda Toups Schieffler Esteve as prayed for in her original petition for Executory Process filed herein on June 30, 1987.” (Emphasis added.)
On October 23, 1987, Master Automotive filed a rule to show cause, alleging it had purchased the foreclosed property at the sheriffs sale on October 21, 1987, for $160,000. Master admitted Mrs. Esteve’s prior right to satisfaction of the debt owed to her, on which principal and interest due at the time of the sale were $110,484.97, as well as to payment of costs in the amount of $534.84, for a total of $111,019.81.
Master stated it also recognized Mrs. Es-teve’s right to recover reasonable attorney’s fees; however, it challenged the 25% amount fixed in Mrs. Esteve’s mortgage, under which the attorney’s fees due by the date of the sale were $27,621.24. Master requested judicial review of the amount due Mrs. Esteve’s attorneys and requested that the disputed funds be placed in the registry of the court pending adjudication of the issue. The court signed an ex parte order placing the funds in its registry and setting a date for a hearing.
On October 30, 1987, Mrs. Esteve, through her attorneys, filed a rule to show cause why the funds should not be released, asserting the ex parte order constituted a wrongfully-issued temporary restraining order or injunction and that Master had waived any right to contest attorney’s fees by its failure to enjoin the original seizure and sale of the property. Mrs. Esteve also sought to have Master held in contempt “for its failure and/or refusal to abide by the lawful and final orders of this Honorable Court.” The court signed an ex parte order releasing the funds to Mrs. Esteve and her attorneys and setting a hearing on Mrs. Esteve’s rule for the same date as the hearing on Master’s rule.
On November 12, 1987, Master filed a motion to rescind the order that had released the impounded funds to Mrs. Esteve and requested the court to order Mrs. Es-teve’s attorneys to replace the funds into the registry of the court. The hearing on this motion was set for the same day as the two preceding rules.
On November 16, 1987, Mrs. Esteve and her attorneys filed a joint motion for a protective order against discovery depositions set by Master and for dismissal of Master’s rules. They asserted Master had waived any rights in the matter by its failure to timely move for an injunction and/or suspensive appeal from the orders of seizure and sale issued on June 30, 1987, and July 20, 1987.
On November 17, 1987, the court signed ex parte a protective order as requested, set a hearing on the motion to dismiss, and continued hearing of all the prior rules and motions pending the outcome of the motion to dismiss. On November 25, 1987, Master filed a motion contesting the November 17th order.
The motion to dismiss was heard on January 29, 1988, and the matter was taken under advisement. By June 17, 1988, because the court had not yet rendered a judgment, Master filed a separate suit against Mrs. Esteve’s attorneys, as mentioned above. That suit is discussed in our opinion in No. 89-CA-38, the companion to this case.
ACTION OF THE TRIAL COURT
On October 19, 1988, the court rendered judgment in the instant case, dismissing the intervenor’s motion to determine the reasonableness of the attorney’s fees.
In its reasons for judgment, the court outlined the procedural history of the case and discussed the facts of the case as related to the court by counsel during the hearing, although no testimony or other evidence had been presented. The court concluded that Master, through its then-attorney, had consented to the August 17, 1987, order in which its prayer for executory process was changed to include payment of Mrs. Esteve’s claim as prayed in her original petition for executory process. The result of this acquiescence and subsequent failure to appeal or to seek writs, the court *319 held, was that Master had waived any right to contest the 25% attorney’s fees sought by Mrs. Esteve in her original petition. The court concluded the order of August 17, 1987, was a final judgment and Master’s motion to determine reasonableness of attorney’s fees was untimely.
On November 7, 1988, Master’s order of appeal was signed. In the companion suit against Amato & Creely, a judgment of dismissal had been rendered on September 19, 1988, and Master had taken an appeal on October 19, 1988. After the appeals were lodged with this court they were consolidated.
ISSUES ON APPEAL
In the instant case, the appellant has raised the following issues:
1. Whether the trial court erred in making a factual finding that Master had consented to the 25% attorney’s fee by virtue of the August 17, 1987, order, because the court in effect granted a summary judgment when no such motion was pending and there was nothing in the record to support such a factual finding; and
2. Whether the trial court erred in failing to find that, even after a judicial sale of property, a second mortgage holder may contest the quantum of the attorney’s fee charged by counsel for the first mortgage holder.
For the reasons that follow, we conclude the trial court erred in dismissing the rule to determine the reasonableness of the attorney’s fees.
Over the past ten years, a series of decisions has made increasingly apparent our supreme court’s intention that courts should exercise close scrutiny over attorney’s fees. This trend began with Saucier v. Hayes Dairy Products, Inc., on rehearing, 373 So.2d 102, 114 (La.1979), in which the court stated:
“[W]e recognize as a primary consideration the Court’s duty to assert the authority conferred by the Constitution to regulate the practice of law, which stems from the grant of original exclusive jurisdiction of disciplinary proceedings against a member of the bar. * * *
[T]his Court’s prevailing judicial authority resulted in the adoption and promulgation of the * * * Code of Professional Responsibility which regulates attorneys’ practices [and] has been recognized as having the force and effect of substantive law. As a result, these rules set forth by virtue of the Court’s exercise of its prevailing judicial authority override legislative acts which tend to impede or frustrate that authority; only legislative enactments in this area which aid the Court’s inherent powers will be approved.”
373 So.2d at 115.
In Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982), the court overruled a 1934 case that had held promissory note provisions for attorney’s fees valid as stipulations for liquidated damages. See W.K. Henderson Iron Wks. & S. Co. v. Meriwether S. Co., 178 La. 516, 152 So. 69 (1934). In Leenerts, the court stated, at 219:
“We view the Code of Professional Responsibility as being the most exacting of laws established for the public good. Hence, the prohibition against a lawyer collecting a ‘clearly excessive fee’ cannot be abrogated by a provision in a note fixing the amount of attorney fees as a percentage of the amount to be collected. Therefore, despite such a provision, courts may inquire into the reasonableness of the fee. * * * ”
In Graham v. Sequoya Cory., 478 So.2d 1223 (La.1985), the court addressed the effect of Act 483 of 1983, an amendment of LSA-C.C. art. 1935 that gave parties the right to contract for attorney fees for collection of promissory notes that would be excessive by standards of the Code of Professional Responsibility (now known as the Rules of Professional Conduct). The court concluded the amendment could not apply to the case before it because the legislation did not become effective until after the suit was filed and that it could not be applied retroactively because it was a substantive change in the law.
*320 By Acts 1984, No. 331, C.C. art. 1935 was repealed and its substance was incorporated into present LSA-C.C. art. 2000. Although Article 2000 originally contained no provision relating to attorney’s fees, it was amended by Act 137 of 1985 to allow for attorney’s fees stipulated in a contract. C.C. art. 2000 states,
“When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest as fixed by Article 2924. The obligee may recover these damages without having to prove any loss, and whatever loss he may have suffered he can recover no more. If the parties, by written contract, have expressly agreed that the obligor shall also be liable for the obligee’s attorney fees in a fixed or determinable amount, the obligee is entitled to that amount as well.” (Emphasis added.)
However, in Central Progressive Bank v. Bradley, 502 So.2d 1017 (La.1987), the court stated in a per curiam opinion that the Code of Professional Responsibility’s prohibition against a lawyer accepting a “clearly excessive fee” cannot be abrogated either by a law or by a provision in a note fixing the amount of attorney’s fees as a percentage of the amount to be collected. Accordingly, the court ruled, because “art. 2000 attempts to regulate attorney fees, it will not be enforced when the attorney fees fixed by the parties are excessive and unreasonable. Notwithstanding art. 2000, the courts may inquire into the reasonableness of such a fee.” Id., at 1017.
The Central Progressive case has additional significance in the matter before us because its procedural posture was similar: holders of a second mortgage on the foreclosed property had intervened in the exec-utory proceeding to contest the reasonableness of the attorney’s fees awarded to the holder of the first mortgage. The court of appeal had held that the intervenors had a right of action to challenge the amount of the fees, but no right of action directly against the first mortgage holder’s attorneys and, further, that under C.C. art. 2000 the intervenors had no cause of action because the agreement to pay percentage-based attorney’s fees was between the parties to the mortgage and mortgage note, who were non-attorneys.
The supreme court’s reversal of the court of appeal’s judgment did not discuss the rights of the intervenor regarding the amount of the fees, but focused on the court of appeal’s interpretation of C.C. art. 2000. Although the supreme court’s decree was phrased as a blanket reversal of the intermediate court’s judgment, it did not disapprove the court of appeal’s reasoning that the intervenor was entitled to challenge the attorney’s fees. Because the result of the reversal was an order to consider the issue raised by theN intervenor, a non-party to the contracts involved, we conclude the supreme court implicitly approved the right of any party to a suit to raise the issue of attorney’s fees, where that party’s rights are affected by such fees.
Accordingly, we adopt the reasoning of the court of appeal on this issue. In a lengthy and well-reasoned opinion, the First Circuit considered numerous issues raised by the intervenor-appellant, including whether the intervenor had a right to attack the terms of the attorney-fee provision in the first mortgage when the parties to it had not. The court pointed out:
“After a judicial sale, the holder of an inferior mortgage is entitled to be paid out of the sale price any surplus after the costs and the claims of superior creditors have been paid. La. C.C.P. art. 2373. Thus, the amount that the holder of the inferior mortgage can recover depends on the amount due on the superior claim. ⅜ * * [Although an intervenor is precluded from raising informalities or procedural defects personal to the parties to the main demand, he is not precluded from asserting the substantive invalidity of all, or a part, of the claim of the seizing creditor * *
Central Progressive Bank v. Bradley, 496 So.2d 525, 529 (La.App. 1 Cir.1986); re *321 versed, 502 So.2d 1017 (La,1987); on remand, 506 So.2d 711 (La.App. 1 Cir.1987).
Additionally, in a case decided shortly after the supreme court’s ruling in Central Progressive, the Fourth Circuit held that a second mortgage holder could intervene in a foreclosure action by the first mortgage holder in order to object to the excessiveness of the stipulated attorney’s fees between the first mortgage holder and the debtor, even if the debtor himself did not object. Gibson v. Burns, 505 So.2d 66 (La.App. 4 Cir.1987). The court stated:
“Columbia, as a second mortgage holder, certainly has the right to contest the validity of the first mortgage. They also have the right to question the amount actually owed on the underlying debt, as well as the costs involved in the foreclosure. Any variance in these items would certainly affect their position as second mortgagee, especially where they purchased the property to protect their security interests. We therefore cannot say they have no real interest in the amount of attorney fees [the debtor] is ultimately required to pay. * * *”
Id., at 68.
Additionally, the right of a second-ranked mortgage holder to contest attorney’s fees awarded to the first-ranked mortgage holder was implicitly recognized by this court in Rollo v. Lousteau, 522 So.2d 183 (La.App. 5 Cir.1988).
Applying the reasoning developed in these eases to the matter before us, we conclude that the failure of Master Automotive to object, to seek writs or to appeal the order of August 17, 1987, did not constitute a waiver of Master’s right to question the amount of the fee due the attorneys for Mrs. Esteve. The rulings of our supreme court compel us to conclude that not even an express stipulation to attorney’s fees in a contract can prevent court review of such fees. Therefore, the district court erred in dismissing Master’s rule.
Accordingly, the case must be remanded for a hearing to determine the reasonableness of Mrs. Esteve’s attorney’s fees. We do not, by this ruling, disapprove the amount sought by the attorneys; it may be the trial court will find them entitled to an amount close to that sought. Under the supreme court’s recent rulings, however, it is clear that the fee must be based on the considerations enunciated in the Rules of Professional Conduct, Rule 1.5, LSBA Articles of Incorporation, Art. 16, Ch. 4 — App., following LSA-R.S. 37:219.
DECREE
For the foregoing reasons, the judgment of the district court is reversed and the case is remanded for a determination of a reasonable fee for Mrs. Esteve’s attorneys for collection of the note. Costs of this appeal are assessed equally between the appellant and the appellee.
REVERSED AND REMANDED.