|1WALTZER, Judge.

STATEMENT OF THE CASE

Plaintiffs, Williams S. Brandner, Patricia Brandner, Ivie A. Schaeffer and George H. Toye (Lenders), holders of a promissory note, sued the makers, New Orleans Office Supply Center, Inc. (Center), Morton M. Goldberg, Marc Favie and H. Lee Trentham, alleging default in payment of the obligation evidenced by the note, and seeking to enforce a mortgage securing the note. Lenders moved for summary judgment against Goldberg and Trentham, and from the trial court’s judgment granting Lenders’ motion against Goldberg, Goldberg appeals. We affirm.

STATEMENT OF FACTS

On 9 January 1979, Center, Goldberg, and Favie executed a promissory note in the principal amount of $315,000.00, payable to bearer.[1] The note was paraphed “Ne Varie-tur” for identification with an Act of Credit Sale executed by Center, creating a lien and privilege on property located in New Orleans. The installment note provided for 9 percent annual interest. The debt was payable in 119 monthly installments of $2500. The loan matured, according to its terms, on 9 January 1989. At the makers’ request, and with Lenders’ consent, as provided for in the note, the parties agreed that the term of the loan would be extended in consideration of an increase in the monthly payment to $3,000; a subsequent agreement increased the monthly payment to $3500.
The uncontradicted affidavit of William S. Brandner shows that the loan is in default, the last payment having been made in September, 1992, leaving a principal balance of $277,233.00 with interest at the contractual rate of 9% per year from October, 1992 until |2paid. Goldberg submitted his affidavit in opposition, saying that he was requested to *860 agree to and agreed to only one extension of the note’s maturity, that being through 9 February 1991, that he was not consulted nor did he consent to the further extension of maturity, and that he suffered unspecified damages as a result of the Lenders’ extension of the note’s maturity.
On the Lenders’ motion for summary judgment, the property was seized and sold through court process. The court-appointed appraiser, Henry W. Tatje, III, MAI, valued the property at $300,000, and the property was sold for $336,000, of which the Lenders received $324,692.07. The Lenders pursued Goldberg and Favie for the deficiency between the net proceeds and the amount due under the note. In support of the motions, Lenders submitted the affidavit of Mr. Brandner attesting to the note, credit sale and default, and setting out the following tabulation of the deficiency:
Principal balance $277,322.00
Accrued interest as of Sheriffs sale 28 April 1994 40,925.95
Advances for taxes (1984 to 1994) 113,056.99
Attorneys’ fees 31,925.80
$463,129.74
Less credit for Sheriffs sale proceeds 324,056.99
Balance due 29 April 1994 $139,072.75
The trial court rendered summary judgments for the lenders against Favie and against Goldberg in the amount of $139,-072.75.

FIRST ASSIGNMENT OF ERROR: The Court erred in determining that Goldberg, an accommodation maker on the note, is liable for real estate taxes on propertg not owned bg Goldberg and which served as securitg for payment of the note by virtue of a mortgage which Goldberg did not sign.

IsWe find no error in the trial court’s determination that, under the facts of this case, Goldberg’s position as accommodation maker of the note, rather than a mortgagor, does not eliminate his solidary obligation with the mortgagor for reimbursement of taxes paid by the Lenders.
Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Reynolds v. Select Properties, Ltd., 93-1480 (La. 4/11/94), 634 So.2d 1180, 1183; Schroeder v. Board of Sup’rs of Louisiana State University, 591 So.2d 342, 345 (La.1991).
A summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La.C.Civ.P. art. 966(B). A fact is material if it is essential to a plaintiffs cause of action under the applicable theory of recovery and without which plaintiff could not prevail. Generally, material facts are those that potentially insure or preclude recovery, affect the litigant’s ultimate success, or determine the outcome of a legal dispute. Prado v. Sloman Neptun Schiffahrts, A.G., 611 So .2d 691, 699 (La.App. 4th Cir.1992), writ not considered 613 So.2d 986 (La.1993).
In Dibos v. Bill Watson Ford, Inc., 622 So.2d 677, 680 (La.App. 4th Cir.1993), this court held that in order to satisfy his burden, the party moving for the summary judgment must meet a strict standard by showing that it is quite clear as to what the truth is, and that excludes any real doubt as to the existence of material fact. Vermilion Corp. v. Vaughn, 397 So.2d 490 (La.1981). The papers supporting the position for the party moving for the summary judgment are to be closely scrutinized while the opposing papers are to be indulgently treated, in determining whether mover has satisfied his burden. Id. All evidence and inferences drawn from the evidence must be construed in the light most favorable to the party opposing the motion. Carr v. City of New Orleans, 622 So.2d 819, 822 (La.App. 4th Cir.1993), writ denied 629 So.2d 404 (La.1993).
When a motion for summary judgment is made and supported with affidavits, depositions and/or answers to interrogatories, the adverse party may not rest merely on the ^allegations or denials contained in the pleadings. Poydras Square Assoc, v. Suzette’s Artique, 614 So.2d 131, 132 (La.App. 4th Cir.1993).
It is not the function of the trial court on a motion for summary judgment to determine *861 or even inquire into the merits of the issues raised. Morris v. Louisiana Coca-Cola Bottling Co., Ltd., 354 So.2d 659 (La.App. 1st Cir.1977), and the weighing of conflicting evidence on a material fact has no place in summary judgment procedure. Mecom v. Mobil Oil Corp., 299 So.2d 380 (La.App. 3rd Cir.1974), application denied 302 So.2d 308 (La.1974). While a motion for a summary judgment is not to be used as a substitute for trial on the merits, Oller v. Sharp Elec., Inc., 451 So.2d 1235, 1237 (La.App. 4th Cir.1984), writ denied 457 So.2d 1194, it should not be denied when there is no real dispute as to any material issue of fact.
The Goldberg affidavit does not put at issue the material facts set forth in Brand-ner’s affidavit. Goldberg’s signature as an accommodation maker of the promissory note, the Ne Varietur identification of the note in conformity with the Act of Credit Sale, the default and the Lenders’ tax payments are not at issue. We note that the paraph is not merely, as is the usual case, “for identification with” the security instrument, in this case, the act of credit sale, but is paraphed “Ne Varietur in conformity with” the instrument. The documents are to be conformed with and to each other, and it is unreasonable to interpret them distinctly and separately with respect to the note’s maker as Goldberg suggests.
Clearly, there is no doubt as to the legal liability of the primary debtor, and signatory to the Credit Sale for reimbursement of the eleven years’ tax payments made by the Lenders. There is nothing in the present law regulating credit sale that would change the unbroken line of jurisprudence since Shannon v. Lane, 33 La.Ann. 489 (1881) through Louisiana Nat. Bank of Baton Rouge v. Heroman, 280 So.2d 362, 376 (La. App. 1st Cir.1973), writ denied 281 So.2d 755, recognizing a mortgagee’s right to reimbursement from the mortgagor of taxes paid by the mortgagee in order to preserve its security. Goldberg does not attack that premise, but contends that the absence of his signature on the act of credit sale denies the Lenders that right as to him. We disagree.
|5Goldberg’s obligation as a maker of the note is purely monetary, and the enforcement sought by the Lenders in this case is purely monetary. Goldberg’s reliance on Smith v. United Fire Ins. Co., 303 So.2d 286 (La.App. 1st Cir.1973), writ denied 303 So.2d 749 (La.1974) is therefor misplaced. In Smith, a suit for wrongful payment of the proceeds of an insurance policy, the court held that an endorser was not liable for performance of acts other than the payment of money, in that case, further to secure the principal obligation by taking out a policy of insurance and making the proceeds thereof payable to the mortgagee in the event of destruction of the property.
In his relationship to the Lenders, Goldberg is liable as surety for the whole of the debt. Sims v. Asian Intern., Ltd., 521 So.2d 411 (La.App. 1 Cir.1987), unit denied 523 So.2d 1337 (La.1988). As a surety, Goldberg is obliged to the Lenders “for the full performance of the obligation of the principal obligor.” See, La.C.C. art. 3045. The full performance of the principal obligor comprehends reimbursement of taxes paid by the lenders; thus, article 3045 requires Goldberg, as surety for the full performance of that obligation, to make the reimbursement. The note, which was paraphed Ne Varietur “in conformity with” the credit sale, contained no language restrictive of Goldberg’s obligation, or limiting his obligation to only the principal and interest recited in the note. The monetary obligation to pay taxes upon which the primary obligor defaulted was properly assessed against the principal obligor’s surety, as contemplated by article 3045. Where Goldberg obliged himself and accepted the provisions of the credit sale which was paraphed for identification in conformity with the note, he is bound accordingly. Louisiana National Bank of Baton Rouge, 280 So.2d at 377.
Indeed, the Lenders’ action in paying the real estate taxes protected Goldberg from liability for the total amount of the outstanding debt, the sum of $463,129.74. Had the Lenders allowed the City to acquire title to the property, and/or convey the property to a third person, which would be the City’s right upon non-payment of the real estate taxes, there would have been no property on which to foreclose and, hence, no credit of $324,- *862 056.99 from the sheriffs sale. Goldberg simply cannot have it both ways: he cannot both take advantage of the $324,056.99 credit from the proceeds of the sheriffs sale, which | (¡was caused by the Lenders’ payment of the real estate taxes, and claim no liability to the Lenders who stand in the position of the City with respect to the tax payments made to the City.
We likewise find Goldberg’s suggested distinction between “mortgagee” and “holder” to be irrelevant to our disposition of this matter. This argument is, essentially, a restatement of Goldberg’s premise that the absence of his signature on the credit sale limits the Lenders’ rights to collection of the monetary obligations for which he stands as surety.

SECOND ASSIGNMENT OF ERROR: Since Goldberg is not liable for real estate tax payments made by the Lenders, the proceeds of the sale should have been imputed first to the principal obligation of the note and accrued interest, resulting in a deficiency liability of $9,190.96.

Goldberg admits in brief that “[i]f the surety is liable to the taxes, the law of imputation is of no benefit since the amount of the advanced taxes must then be added to his deficiency as well as the deficiency of the primary debtor.” In light of our disposition of the First Assignment of Error and Goldberg’s admission, this Assignment is moot.

THIRD ASSIGNMENT OF ERROR: The court’s award of contractual attorneys’ fees based on a percentage of principal and accrued interest was made over defendant’s objection and without evidence supporting the reasonableness of the fee.

The default judgment rendered in favor of the Lenders and against the primary obligor, Center, on 10 December 1993 awarded attorneys’ fees in the amount of 10% as set forth in the note. That judgment was not appealed, and the reasonableness, vel non of the fees was not litigated.
The trial court awarded attorneys’ fees in the amount of 10% of the amount recovered, as provided in the credit sale. Goldberg has apparently abandoned his theory that monetary charges imposed in the security instrument are not binding on him as a maker of the note but non-signatory to the security instrument, at least for purposes of this assignment of error. He contends that the contractual fee is unreasonably high, relying on the guidelines set in Leenerts Farms, Inc. v. Rogers, 421 So.2d 216, 219 (La.1982), including the time and labor required, novelty and difficulty of legal issues, requisite skill, ^likelihood of preclusion of other employment, customary fee, results obtained, amount in controversy, time limitations, nature and length of attorney-client relationship, experience, reputation and ability of counsel, and whether the fee is fixed or contingent.[2]
La.C.C. art. 2000 allows parties to stipulate contractual attorneys’ fees as a percentage of the amount of the indebtedness. Article 2000 is limited, however, and cannot preclude judicial review of a claim of “clearly excessive” attorneys’ fees. Central Progressive Bank v. Bradley, 502 So.2d 1017 (La.1987); Gibson v. Burns, 505 So.2d 66, 68-69 (La.App. 4th Cir.1987). The standard of review was stated in Gibson, 505 So.2d at 69:
[RJeview of purportedly excessive attorney fees should be tempered with judicial restraint. The courts should not be in the business of setting fees. Article 2000 authorizes a valid contract for attorney fees *863 and the courts should not interfere with that contract unless there is a “clearly excessive fee” involved. The term “clearly excessive” used by the Court in Leenerts Farms, supra, was taken from the provisions of DR 2-106 of the Code of Professional Responsibility as they existed at that time. We interpret that term to mean so grossly out of proportion with the fees charged for similar services by other attorneys in the locale as to constitute an unquestionable abuse of the attorney’s professional responsibilities to the public.
Eight years ago, the Gibson court found the stipulated 25% fee of $11,727 not to have been clearly excessive where counsel’s time records supported a bill, based on hourly rates, of $7,109.90. In Gibson, counsel instituted an executory process action, defendant secured interim protection from the bankruptcy court, but the case was remanded to state court. The Sheriff conducted a judicial sale in January, 1986, and defendant questioned the imposition of a 25% stipulated attorney’s fee. The stipulated fee exceeded the hourly fee by $4,617.10, or approximately 65%, and was found not to have been clearly excessive.
| sin the instant case, plaintiffs’ counsel filed suit for executory process, obtained two summary judgments, dealt with two bankruptcies and a third threatened bankruptcy, handled two judgment debtor rules, responded to the instant appeal with an extensive brief and with oral argument, and is still engaged in the attempt to collect the deficiency judgments against the debtors. The latter action involves garnishment and seizure of debtors’ property.
In support of his claim that attorneys’ fees of $31,925.80 (approximately 10%) are unreasonable, Goldberg suggests that (1) the Lenders were willing to settle “for but a fraction of’ the contractual fees had the matter been resolved amicably; (2) Lenders’ counsel “admitted in open court” that the amount of time expended does not justify the amount of the percentage fee; and (3) that Goldberg should not be responsible for time spent by Lenders’ counsel seeking reimbursement of Lenders’ tax payments, should Lenders fail to prevail on appeal of this issue. We find these arguments do not support reduction of the trial court’s award.
Clearly, settlement negotiations concerning payment of a prevailing party’s attorneys’ fees are inadmissible in determining a reasonable fee. The “admission” referred to by Goldberg in brief is not found in the record on appeal. Lenders’ counsel suggests in brief that an hourly based fee of $15,000 had been justified at the time of the summary judgment. Substantial work remained to be done prior to collection of Lenders’ judgment.
In light of the Gibson standard, we cannot say that the record shows the trial court was manifestly erroneous in setting counsel’s fees at the stipulated 10% of the debt. In Bon-fanti, the court found error in the trial court’s failure to award contractual attorneys’ fees of 25%. Here, we find no error in the trial court’s award of contractual attorneys’ fees of approximately 10%. Rosell v. ESCO, 549 So.2d 840 (La.1989); Bonfanti, supra; Gibson, supra.
Because we affirm the trial court’s award of reimbursement of Lenders’ tax payments, Goldberg’s third justification for reduction of attorneys’ fees is without merit.

19CONCLUSION

Having found appellant’s assignments of error to be without merit, we affirm the judgment of the trial court granting summary judgment in favor of William S. Brand-ner, Patricia Brandner, the Estate of Ivie A. Schaeffer and George H. Toye.

AFFIRMED.

. Trentham signed the note on 6 April 1989.

. Leenerts was abrogated with respect to its holding on attorneys’ fees in Caplan v. Latter & Blum, Inc., 462 So.2d 229, 233 (La.App. 5th Cir.1984), writ granted 462 So.2d 1255 and rev’d on other grounds, 468 So.2d 1188 (La.1985), wherein the court noted that Leenerts was legislatively overruled by the enactment of 1983 Louisiana Acts, No. 483 Sec. 1, amending Louisiana Civil Code Article 1935 (now Article 2000). Subsequently, the Louisiana Supreme Court found the legislation to be entitled only to prospective application. Graham v. Sequoya Corp., 478 So.2d 1223 (La.1985). By Act 137 of 1985, effective 3 July 1985, the legislature added essentially the same provision relating to attorneys' fees to Article 2000 that the 1983 amendment had added to Article 1935. "This time, however, the legislature expressly provided for the amended article's retroactive application. Given the legislature’s express intention that the amendment have retroactive effect, we feel compelled to render our decision in the present case in accordance with the dictates of Art. 2000, as amended.” Bonfanti v. Davis, 487 So.2d 165 (La.App. 3d Cir.1986).