307 So.2d 787 (1975)
ENTRON, INC.
v.
CALLAIS CABLEVISION, INC.
No. 10111.
Court of Appeal of Louisiana, First Circuit.
February 10, 1975.
*788 Stanley L. Perry, Galliano, for appellant.
Jerry Brown, Monroe & Lemann, New Orleans, for appellee.
*789 Before LANDRY, BLANCHE and NEHRBASS, JJ.
LANDRY, Judge.
Defendant (Callais) appeals from judgment awarding plaintiff (Entron) the sum of $18,653.55, comprising the balances due on two contracts for construction of a cable television system and an open account for the purchase of materials and supplies ordered by Callais to supplement and augment the system. Callais reconvened denying that any balances were due and asserting a claim for allegedly defective materials furnished by Entron in fulfillment of the construction contracts. Entron has answered the appeal praying that its judgment be increased to $26,848.71. We amend the judgment to allow certain portions of Callais' reconventional demand. We reject certain portions of Entron's claims and render judgment in favor of Entron in the sum of $18,389.02.
Callais urges that the trial court erred in the following respects: (1) Allowing Entron any recovery whatsoever despite Entron's failure to establish sale and delivery of the items composing Entron's claim as required by law, namely, failure to produce signed receipts or delivery tickets; (2) Permitting Entron recovery on open account for merchandise included within the construction contracts, thus resulting in a double charge to Callais; (3) Granting open account claims for warranted merchandise replaceable at Entron's expense; (4) Permitting claims for merchandise either rejected by Callais or returned for credit, and (5) Failing to grant Callais credit for payments on account.
In answering the appeal, Entron contends the trial court erred in rejecting certain allegedly established claims. Entron concedes some minor credits are due Callais but urges that allowing for such credits, Entron is entitled to judgment in the sum of $26,848.71. Procedurally, Entron urges that the trial court erred in declining to declare its request for admissions and answers admitted by virtue of Callais' failure to timely answer said request as provided for by LSA-C.C.P. Article 1496.
Entron manufactures and supplies components and services used in the construction, operation and maintenance of cable television systems. Entron also designs and constructs cable television systems to specification for persons or firms who desire to furnish this type of service in any given locality. On August 29, 1968, pursuant to its designated Contract #1281, Entron contracted to construct a community cable television system for Callais in and around Golden Meadow, Louisiana, consisting of a 600 foot receiving tower, approximately ten aerial strand miles of cable and related amplification equipment. The contract stipulated a basic price of $76,688.00, including two options exercised by Callais when the agreement was confected. A third option provided for an additional maximum cost of $5,000.00 should it be determined that piling was required to support the tower. This option was accepted and approved by Callais in writing on or about January 22, 1969. Pursuant to Contract #1281, approximately 15 miles of cable were constructed. Seven contract deviations were suggested by Callais, and no amount is claimed therefor by Entron. Deviations 2, 3, 4 and 5 were duly approved by Callais, and the cost thereof added to the contract price by Entron. Deviation 6 is mentioned in a letter from Entron to Callais dated March 25, 1969. The nature of the deviation proposed is not shown nor was it accepted by Callais in writing as required by the contract. By deviation 7, Entron sought Callais' approval of additional tower construction expense in the sum of $3,350.00 resulting from the use of piling. This item was rejected by Callais based on the contract limitation of $5,000.00 in the event piling were required. Entron concedes that this $3,350.00 is not owed by defendant.
Callais made an initial deposit of $30,000.00 on Contract 1281. On January *790 20, 1969, Entron billed Callais for $48,466.00, which included the cost of approved option number 3 and deviations 2, 3, 4 and 5. On May 7, 1969, Callais was billed for $31,905.00, allegedly a final billing, by an invoice which recited that details were attached. The details alluded to were not made part of the record by either party. The record discloses a total billing by Entron to Callais on Contract 1281 of $110,371.00 as of May 10, 1969. However, when the basic contract price is added to the approved option and deviations, a total of $105,900.05 is indicated. Entron's failure to attach details to its May 7, 1969 final invoice for $31,905.00 makes it impossible to directly compute the amount due on Contract 1281 because Entron's accounting system did not include entry of Callais' $30,000.00 down payment on Entron's general ledger, and the only proof of the total billing consists of Entron's recapitulation hereinafter mentioned.
On September 23, 1969, Entron and Callais confected Contract 1330 which provided for the installation of up to 65 additional miles of cable as an extension of the original project. Under this agreement, 24.96 aerial strand miles of cables were installed for the unit price of $3,450.00 per mile, or a total price of $86,112.00. Pursuant to addendum #1, Entron installed anchors, anchor down guys, strand cables and other equipment costing $14,953.77. By mutual agreement, deviations 1 and 4 added $337.00 to Contract 1330 for additional wire cables and mounting brackets, respectively. One-half of freight costs amounting to $814.26 was charged to Callais as was also the sum of $426.60 for framing 237 poles. The total charges for this project, therefore, amounted to $102,643.63. Callais made a down payment of $10,350.00. By invoice #71770, dated December 15, 1969, Callais was billed for $31,050.00. On April 22, 1970, Entron rendered invoice #72326 in the sum of $42,283.63, which set out in detail all prior contract billings including addenda, deviations, all other charges, and which included all payments made by Callais. This invoice was intended by Entron to be a final billing for Contract 1330. Subsequently, however, Entron discovered that a payment of $20,000.00 made by Callais was, on March 20, 1969, erroneously credited both to Contract 1330 and to Callais' open account, which accounting error resulted in Callais being given a $40,000.00 credit for a $20,000.00 payment. The mistake was called to Callais' attention, and invoice #72326A, dated September 15, 1970, was sent to Callais to correct the error, showing a balance due of $18,950.00 on Contract 1330. Although Callais denied owing any balance on any account whatsoever, Callais concedes that it was erroneously given a $20,000.00 credit on Contract 1330, and that the $20,000.00 payment was ultimately credited to Callais on Contract 1330.
In December, 1968, while construction on Contract 1281 was still in progress, Callais began ordering various materials and supplies from Entron on open account. The numerous items involved were required to service Callais' subscribers and expand Callais' operation inasmuch as the demand for service exceeded Callais' expectations. The accounting details regarding this account are reflected in Entron's Exhibit 8, which is the general ledger of Callais' accounts kept by Entron as part of its normal business records. Postings on this general ledger are exact duplicates (carbon copies) of the statements rendered Callais from December, 1968, through and including April, 1970. Callais contends the May, 1970 statement was a final accounting between the parties. In essence Callais admits receipt of all goods invoiced by Entron prior to the May, 1970 statement showing a balance due of $28,133.47. Callais considers the correctness of this statement as evidenced by its payment of the balance of $28,133.47 shown to be due, but contends that no merchandise was ordered or received from Entron subsequent to May, 1970.
*791 Our examination of the record discloses that prior to rendition of the May, 1970 statement, Entron shipped merchandise to Callais on open account in the aggregate invoice amount of $23,208.93. Receipt of the merchandise represented by said invoices, as hereinafter itemized, was either acknowledged by Callais or established by Entron. Said invoice numbers and the amounts thereof are as follows:

INVOICE NUMBER AMOUNT
 59620 $ 678.23
 59622 332.67
 59621 1,367.04
 59650 59.90
 60326 37.25
 60413 20.20
 60400 68.35
 60413A 58.95
 60325 294.65
 60333 69.91
 60413B 58.95
 70166 466.40
 70313 16.54
 70307 988.80
 70376 156.68
 70383 5.30
 70470 17.48
 70576 1,770.96
 70624 102.35
 SR 2107 1.25
 70577 275.00
 70817 4.04
 70762 158.55
 SR 2065 4.90
 71058 203.68
 71057 188.62
 71176 19.50
 71128 1,498.74
 71195 10.24
 71175 81.75
 71207 68.10
 71116 261.25
 71196 3.84
 71194 139.50
 71219 21.15
 SR 2159 1.60
 71399 5.45
 70762A 40.75
 71196A 6.00
 71420 417.25
 71526 159.92
 71390 114.50
 71390A 234.33
 SR 2269 19.20
 71420B 12.61
 71664 1,227.28
 71420A 102.24
 71741 79.41
 71740 695.80
 71740A 60.80
 71858 181.35
 71858A 60.33
 71836 1,417.14
 72035 934.00
 72021 271.60
 72020 229.07
 SR 2408 6.00
 72035B 217.65
 72035A 29.50
 72021A 782.48
 72142 119.29
 72019 121.90
 72021B 73.78
 72333 3,500.00
 72358 500.00
 72283 110.15
 72020A 584.89
 SR 2519 1.65
 72441 1,340.00
 70624A 22.69
 72494 17.60
 ________
Open Account total through the
 May, 1970 statement $23,208.93

Subsequent to rendition of the May, 1970 accounting, Entron billed Callais for 16 invoices on open account totaling $8,961.60, all posted after the May, 1970 statement. We will subsequently treat each said invoice individually.
On June 2, 1971, Entron filed suit for $28,134.18, which it recapitulated as follows: Balance due on contract 1281, $6,905.00; balance due on open account to October 7, 1970, $20,152.97; Invoice No. 73241 for SMT Taps in the sum of $1,285.47, and an Intrudalarm system purchased from an Entron subsidiary for $455.50, making a total of $28,798.94. Credits were allowed in the sum of $431.00 on Contract 1330, and a credit of $232.92 was recognized on Invoice 71740 due to a decimal place error on said invoice, leaving the sum of $28,134.18 claimed by Entron. Callais reconvened for $5,000.00 damages allegedly sustained in replacing defective components installed by Entron pursuant to the construction contracts.
Entron answered the reconventional demand denying liability thereon, and moved that the matter be set for trial, which motion was granted and trial set for April 10, 1972. On October 8, 1971, Entron propounded written interrogatories which Callais failed to answer. Entron moved the court to compel discovery. The trial court allowed Callais 30 days from the trial of the motion in which to answer the interrogatories, *792 and awarded Entron $150.00 as Attorney's fees for the rule. Callais then answered the interrogatories. A pre-trial conference was scheduled for March 22, 1972, but the record does not indicate it was held. Callais amended its reconventional demand on March 2, 1972. It was promptly denied by Entron. A continuance was then moved for by Entron on the ground of unavailability of a witness. However, the motion did not specify the date to which the matter would be continued.
On June 15, 1972, Entron served upon Callais a request for admission of facts. In essence it required Callais to admit that it had received the materials, goods and services, and in the amounts thereof as set out in some 70 invoices attached to plaintiff's petition or mailed to Callais. Callais did not file an answer to Entron's request for admissions until February 21, 1973. Entron took the position that Callais' failure to answer within 15 days, as provided by LSA-C.C.P. art. 1496, constituted an admission of all facts therein requested to be admitted. Entron also objected to the form of Callais' answer which was in the nature of a general denial instead of a specific admission or denial of each individual request. It is conceded that Entron took the deposition of Harold Callais (one of the owners of defendant concern) prior to Entron's filing its request for admissions. The deposition was not introduced in evidence.
In view of the petition, answer, interrogatories and deposition of Harold Callais, the trial court declined to consider Entron's request for admissions to have been admitted because of Callais' untimely answer thereto. The trial court held, however, that if Callais compelled Entron to prove each item on the numerous invoices involved, the court would favorably consider Entron's motion for reimbursement by Callais of all expense incurred by Entron in making such proof, together with reasonable attorney's fees as provided for in LSA-C.C.P. art. 1514.
The trial was continued twice due to Entron's inability to produce key witnesses who either handled or were familiar with defendant's accounts, but no longer worked for Entron. These witnesses included Gladys H. Collins, Supervisor of Entron's General Accounting Department, who left Entron in January, 1971; O. D. Page, former Vice President, who obtained other employment on June 26, 1970; and Isadore Lieberman, former Director of Entron's CATV operations, who obtained another position in August, 1972.
LSA-C.C.P. art. 1496 provides that a request for admission of the genuineness of a document, or of the truth of relevant fact set forth therein, is deemed an admission thereof unless, within 15 days of service (or in such shorter time as the court shall fix), the party of whom the request is made serves on the requesting party either an affidavit specifically denying the matters of which an admission is requested, or giving detailed reasons why the truth of the matters cannot be admitted or denied, or written objections based on the ground that some or all of the requested admissions are privileged or irrelevant, or that the request is otherwise improper in whole or in part. Entron urges that we invoke Article 1496 and deem its requests admitted.
Failure to answer according to Article 1496, above, does not per se result in requests for admissions being deemed an admission of the truth of the facts sought to be established. In Voisin v. Luke, 249 La. 796, 191 So.2d 503, this issue was dealt with in detail by the Supreme Court. In essence the court noted that the statute is designed to expedite trial of cases and minimize the expense of litigation. The purpose of the provision is to require admission of matters that should be admitted, or which will not be disputed at the trial, and thus eliminate the need to prove uncontroverted facts. The device may not be applied to a controverted legal issue which goes to the heart of the merits of a case. In Voisin, above, the court also noted that *793 an untimely answer should never automatically result in an admission because the suppression of the real facts might well result from such a rule.
Applying the rule in Voisin, above, we find that the trial court correctly refused to deem Entron's requests admitted in this instance. The record clearly shows that from the inception, defendant sought by its answer to deny all plaintiff's allegations, and require plaintiff to produce proof of each element of plaintiff's claim. Defendant's answer to plaintiff's interrogatories also disclosed a similar intent. Moreover, we note that plaintiff's request for admissions included an admission regarding Invoices 72305 A, and 72305 B, which represent a double billing for a single item involving a charge of $29.50. Had defendant admitted both invoices, defendant would have conceded a dual charge for a single item. We also note that the record contains other instances of two invoices bearing the same number, apparently due to Entron's error.
Because of Callais' denial of Entron's request for admissions, Entron was compelled to produce proof of the sale of numerous items on open account, receipt and delivery of which was admitted by Harold Callais at trial. Under the circumstances, we reserve Entron's right to apply to the trial court for relief pursuant to LSA-C.C.P. art. 1514.
Mrs. Collins testified that open accounts were ordinarily handled by Entron as follows: A written or oral order was received by the sales department which prepared a sextuplet invoice including the name and address of the purchaser and the items ordered. Three copies, including the original, are sent to the accounting department. The remaining three copies are sent to the shipping department. After filling the order, the shipping department then sends the invoices back to the sales department with advice showing that the goods have been shipped. The sales department then extends the unit prices on the invoices, and sends these copies to the accounting department which then totals the value of the goods, adds the sales taxes and freight charges, if any, and fixes the final invoice charge. A copy of the completed invoice is sent to the sales department and two copies, including the original are sent to the customer. One copy of the completed invoice is retained by the accounting department from which the amounts thereon are posted to the general ledger. Mrs. Collins also explained that contract invoices were handled in virtually the same manner except that each invoice which related to a contract job bore the contract number. She also noted that invoices showing prices and charges were never sent a customer until after the sales department received shipping advice from the shipping department showing what merchandise had actually been shipped. Mrs. Collins' testimony makes it clear that she personally prepared these balance sheets from company invoices, copies of which were sent to Callais. We also note that copies of these same invoices are of record herein. Mrs. Collins frankly acknowledged that she had no personal knowledge of delivery of the merchandise represented by the invoices or the shipping advices issued in connection therewith. Her testimony of the accounting procedure employed was fully corroborated by O. D. Page, former Vice President in charge of Entron's CATV operations. Mr. Page also noted that it was not unusual, but rather it was customary, for customers of Entron to purchase on open account during construction of a turn-key contract system such as Entron built for Callais.
In view of the foregoing, Entron has made out at least a prima facie case of delivery of all goods shown on its numerous invoices appearing of record. In a suit on open account, where the record shows that books were kept in the normal course of business and indicated that merchandise *794 has been sold and delivered, proof of actual delivery of each individual item is not required of a vendor. Such testimony makes out a prima facie case which shifts the burden upon the purchaser to show a lack of receipt or delivery. Ritchie Grocer Co. v. Dean, 182 La. 518, 162 So. 62.
We also note Mrs. Collins' testimony to the effect that after the $20,000.00 dual credit was discovered and made known to defendant, a dispute arose concerning the balances due. In explanation she prepared, between October 7, and December 3, 1970, a balance sheet introduced as P-1 showing a balance due of $6,905.00 on Contract 1281; a balance sheet identified as P-2 showing a credit of $431.84 due defendant on Contract 1330, and a balance sheet introduced as P-3 showing a balance due on the open account in the sum of $20,152.00, all of which were sent plaintiff. It is significant that until suit was filed herein, Callais never seriously questioned the balances shown on these three balance sheets.
From the mass of evidence, including defendant's admission that the sum of $6,905.00 was due on Contract 1281 as of October 6, 1969, we find said amount was in fact due on said contract as of said date. Defendant acknowledges said amount represented withholding of payment made by defendant to protect itself against potential liens by Fort Worth Tower Company, Plaisance Dragline and Dredging Company, and others who performed work on the tower, and who presumably had not been paid by Entron. This sum, $6,905.00, represents the total amount, $110,371.00, billed by Entron, less payments made thereon as of said date in the amount of $103,446.00. It is noteworthy that Entron credited Callais, on Contract 1330, for the $4,592.00 which Callais paid directly to Plaisance. However, in the following recap of Contract 1281, we allow credit for payment of said $4,592.00 on Contract 1281 where it rightfully belongs. On the basis of the following recap, we find a balance due Entron on Account 1281 in the sum of $2,313.00.

Base Contract $ 76,688.00
Option #3 5,000.00
Deviation #2 1,500.00
Deviation #3 2,419.05
Deviation #4 4,337.00
Deviation #5 15,956.00
 ___________
 $105,900.05
Difference between invoiced and contract
amounts, including options
and approved deviations admitted
by Callais 4,470.95
 ___________
Total $110,371.00
Billings:
Deposit $ 30,000.00
Invoice 60034 48,466.00
Invoice 70262 31,905.00
 ___________
 $110,371.00
Payments and Credits:
Check 002 (Deposit) $ 30,000.00
Check 24 2,419.00
Check 002 30,091.00
Check 048 15,956.00
Check 144 25,000.00
 ___________
 $103,466.00
Check 241 to Plaisance Dragline 4,592.00
 ___________
 Total Payments $108,058.00
 Balance Due 2,313.00

With regard to Contract 1330, we find the following recap, showing a balance due Entron in the sum of $14,160.16, represents a correct analysis of said account:

Base Contract $ 86,112.00
Addendum #1 14,953.77
Deviation #1 262.20
Deviation #4 74.80
Freight Costs (agreed onehalf) 814.26
Poles Framed (273) 426.60
 ___________
 $102,643.63
Billings:
Deposit 10,350.00
Invoice 71770 31,050.00
Invoice 72326 42,293.63
Invoice 72326A 18,950.00
 ___________
 $102,643.63
Payments and Credits:
Deposit (Check 145) 10,350.00
Check 337 30,000.00
Check 503 20,000.00
Check 933 28,133.47
 __________
 $88,483.47
 Balance due $14,160.16

As regards the open account, we have previously shown that in May, 1970, Entron *795 billed Callais for a balance of $28,133.47. As of that time, we find that Entron had shipped goods on open account in amounts, either established or admitted by Callais, aggregating $23,208.93. We find, however, certain errors therein which we shall discuss and rectify.
We shall proceed to a discussion of the invoices rendered subsequent to the May, 1970, statements furnished Callais by Entron. Invoice #72020B, representing completion of #72020, dated February 20, 1970, is for a total of 24,533 feet of 21-959 cable. Callais' witnesses had no knowledge of this particular invoice and did not deny delivery of the goods covered thereby. The trial court allowed recovery of this invoice in the sum of $701.15, which we find proper. Ritchie Grocer Co., above.
Invoice #72330, in the sum of $358.65, for 300 ground blocks, posted May 25, 1970, pursuant to an order dated April 20, 1970, was disallowed by the trial court on the basis that the charge should have been shown on the May, 1970, statement. No rebuttal was offered to disprove receipt by Callais. We allow recovery of this item by Entron. Ritchie Grocer Co., above.
The trial court disallowed recovery of Invoice # 72331, in the sum of $1,882.83, covering 15,000 feet of cable. This merchandise was billed pursuant to an order dated April 20, 1970, posted to Entron's general ledger on April 29, 1970. We reverse and allow this item for the same reasons noted in allowing Invoice #72330, above.
Entron's Invoice #71196B represents completion of an order made August 26, 1969, pursuant to Invoices 71196 and 71196A. It covers four CWB-6's in the amount of $7.60. Despite Callais' admission of having placed the order, as shown on page 249 of the record, the trial court disallowed this item. Based on Callais' admission and failure to show cancellation thereof, we reverse the trial court and allow Entron recovery of this item.
Invoice 72283, in the sum of $166.50 for 600 preform telegrips, completes an order made by Callais on April 4, 1970, for 1,000 of such items, 400 of which were previously shipped. Callais neither disputed the invoice nor showed a cancellation thereof. We reverse the trial court's disallowance of this item.
Invoice 72284, in the sum of $296.00, filled an order by Callais April 14, 1970. The items were shipped September 9, 1970. We note the time lapse between order and shipping and posting date. However, Callais did not dispute the invoice or claim cancellation. The trial court disallowed recovery of this item. We reverse. Ritchie Grocery Co., above.
Invoices SR-2579, 2629 and 2710 are for repairs of equipment sold Callais. In addition to repair charges, said invoices include freight charges of $7.15, $2.00 and $1.90, respectively. The record discloses that said items were in fact returned to Entron for repair. We conclude, however, that Entron is entitled to freight charges only because some of the units were under warranty when returned. Item 3, on SR-2579, is for repair to B-3 amplifiers, one of which, # 175 #58745, was previously returned by Callais for repair, and no charge was made therefor as evidenced by SR-2408, dated February 24, 1970. We find no merit in Entron's argument that these repair charges are allowable because the one year warranty on the units had expired. The record contains ample evidence of repair to units by Entron more than one year after purchase, without charge, other than for shipping charges which Callais always paid. Under the circumstances, we affirm the trial court's disallowance of these repair charges, but reverse the lower court's rejection of recovery of the freight charges shown on these three invoices.
Invoices 71741A, in the sum of $57.88, purports to complete an order made December 12, 1969, pursuant to Invoice 71741. It indicates a shipping date of June 4, *796 1970, but is also stamped "Cancelled". We find that the record does not support Entron's claim that this order was only partly cancelled. Consequently, we disallow this invoice in its entirety.
Invoices 72496, 72496A and 72496B represent a single written order by Callais for four grades of materials known as FTM's. Number 72496 shows a shipping date of June 12, 1970; the other two indicate shipping dates of July 2, and October 7, 1970, respectively. This order was one of the few placed by Callais in writing. Entron failed to produce the written order. Additionally, Leroy Evans, a former employee of Entron, who was working for Callais when this order was placed, testified that this material was sent collect and never received. Under the circumstances, we conclude that Entron has failed its burden of proof regarding these invoices.
The trial court expressly rejected a charge of $350.00 for two days engineering services, at $175.00 per day, to "resweep phase 1", as shown on Invoice 72205. There is some dispute concerning whether this service was actually performed. Despite the reference to phase 1 (Contract 1281), the invoice bears notations indicating the charge relates to Contract 1330, and forms part of the services undertaken to be performed by Entron pursuant to said contract. We are fortified in this conclusion by Entron's letter of transmittal of Contract 1330 which, in paragraph three thereof, states that a resweep of the entire portion of the system covered by Contract 1330 would be undertaken by Entron prior to Callais' final acceptance. We affirm rejection of this item on the ground that the record preponderates in favor of the conclusion this service was included within Contract 1330.
By Invoice 72914, Entron billed Callais for $3,539.25 for several hundred multi taps of various grades and by Invoice 73241, billed Callais for $1,285.47 for 5,000 ½" plastic cable spacers. Invoice 72914 indicates an order date of September 3, 1970, and shipment, freight collect, on September 10, 1970. Two items thereon, for 40 SMT-10's and SMT-20's are marked cancelled as of December 14, 1970. Invoice 13241 indicates an order date corresponding with the December 14, 1970 cancellation date shown on Invoice 72914; it also indicates shipment C.O.D. on December 22, 1970. Evans testified he declined to accept delivery because the prices charged on invoices 72914 and 73241 were excessive. During trial, Entron conceded the material covered by Invoice 73241 was not delivered and gave Callais credit in the amount of $1,285.47 represented thereby. Entron attempted to show that Evans was mistaken with regard to the merchandise covered by Invoice 72914. The trial court accepted Evans' unequivocal denial of acceptance and denied recovery of the sum of $3,539.25 claimed by Entron pursuant to Invoice 72914. We find no error in this factual determination.
By checks numbered 143 and 702, in the amounts of $6,846.86 and $10,000.00, respectively, Callais paid a total of $16,846.86 on the open account. Entron's exhibit P-8 (an itemization of the open account) reflects that Callais is entitled to credit on the open account for five invoices, namely, Numbers 70376A, SR-2235, SR-2537, SR-2575 and 71740A, in the amounts of $150.00, $504.00, $834.58, $2,396.65, and $232.92, respectively. To the above credits, we add the $29.50 double charge resulting from Invoice 72035A, and determine that Callais is entitled to a total credit of $20,994.51 on the open account. Deducting said credit from the total of $26,632.71 found to be due on the open account, we conclude Entron is due a balance of $5,638.20 on this account.
The record establishes that Entron's Lieberman sold Callais an Intrudalarm system for the price of $455.50, which merchandise was supplied directly to Callais by a subsidiary of Entron. There is no dispute concerning this amount, and Entron is entitled to recover the cost thereof.
In reconvention, Callais claims $5,000.00 for replacing and installing defective *797 equipment, particularly devices known as B-3 amplifiers. Although claims were also made for loss of revenues, absolutely no attempt was made to prove such losses. In support of its claim for alleged replacement costs, Callais introduced Exhibit D-22, an in globo offering of invoices, duplicate invoices, statements, packing slips and order acknowledgments from Spencer-Kennedy Laboratories, Inc. and Kaiser Aerospace and Electronics Corporation, to prove purchase of replacement parts. The trial court awarded Callais judgment on its reconventional demand in the sum of $2,260.38 for sums found to have been spent on replacing defective material. Entron contends the trial court erred in so doing because Callais failed to establish the defects complained of, and also because Callais failed to comply with contractual provision requiring written notice of such defects and demand for repair or replacement.
The record contains numerous invoices evidencing return of B-3 amplifiers and other components for replacement or repair. Although the proof, from the standpoint of Entron's records and Callais' offerings, leaves something to be desired, the record does establish that some defective components were supplied by Entron. Harold Callais and Evans both testified that some trouble was experienced with the system installed pursuant to Contract 1281 from commencement of its operation. When trouble was first encountered, Evans was still in the employ of Entron. The difficulties are shown to have been concerned primarily with the function of B-3 distribution amplifiers, the precise nature of the malfunctions having never been detected despite repeated returns of B-3 amplifiers and their repair or replacement by Entron. Callais' claims were sought to be disproved by Entron's offering of two weekly reports submitted by Evans in December, 1969, stating that the system, as a whole, was working well. We reject Entron's contention in this regard because it appears that most of the difficulties arose in the spring of 1969, several months before Evans' December, 1969 reports. Moreover, the fact that the system worked, as an entity, does not foreclose the possibility of defective components. In this regard, we note that while the system included several hundred B-3 amplifiers, or similar components, the difficulties encountered involved only 9 such units. If any one unit failed during warranty, it was required to be replaced or repaired at Entron's expense.
An invoice rendered by Entron on May 7, 1969, indicated at least substantial completion of Contract 1281. No formal acceptance thereof, as required by paragraph 10a of the contract, appears of record. Nevertheless, the system was in fact accepted by Callais who began its operation. We conclude that, for all practical purposes, the parties have waived the requirement of written acceptance and deem the work on Contract 1281 accepted as of May, 1969. We also conclude that in this instance the 1 year warranty established in said contract commenced as of the last day of May, 1969.
Invoice SR-2269, received by Entron on October 3, 1969, shows return of a B-3 amplifier for repair. On May 18, 1970, Entron received B-3's for repair as evidenced by Invoice SR-2579, one of which units was previously repaired in February, 1970, pursuant to Invoice SR-2408. The invoice also shows that Entron charged for repairing this unit. The record further discloses that Entron received goods on numerous occasions and fulfilled its warranty obligations notwithstanding Callais' failure to give written notice. Under these circumstances, we find the requirement of written notice of defective material was waived by Entron.
Finally, Entron contends that Callais' reconventional demand must be limited to Entron's contractual obligation to replace defective merchandise, consequently no money judgment may be rendered against Entron in this regard. The contracts so limit Entron's obligation. However, the record conclusively shows that notwithstanding said obligation, Entron either declined *798 or was unable to furnish proper replacement articles in some instances. Under the circumstances, Callais had no alternative except to seek suitable merchandise from other sources. Charging the cost thereof to Entron is merely enforcing Entron's obligation. We note that, in this respect, some of the costs involved were less than those Entron charged Callais for the original items. Callais has not claimed, and therefore no credit is allowed Callais for the labor expended in replacing defective parts or consequential damages due to loss of revenue and service.
The testimony of Howard Callais and Evans, supported by invoices, statements and other documents, show purchases of replacement units from Spencer-Kennedy Laboratories, Inc. and Kaiser Aerospace and Electrical Corporation, in the sum of $4,177.84, itemized as follows: Spencer-Kennedy, Invoice 109110, $1,265.07; Invoice 110092, $10.88, and Invoice 112105, $229.48, an aggregate of $1,505.43, from which we deduct sales tax in the sum of $24.57 not paid on Invoice 109110, thus making a total paid Spencer-Kennedy in the sum of $1,480.86. Kaiser Aerospace, Invoice 10955 in the sum of $2,217.25, and Invoice 12252 for $479.73, both aggregating $2,696.98.
Entron contends the replacement amplifiers purchased by Callais from other sources were new, better and more expensive than the original B-3's contemplated by the contract. While the replacement units were undoubtedly later models, and therefore probably better than those originally installed by Entron, we nevertheless find that they did not, in all instances, cost more than the units initially furnished by Entron. For example, Entron's Invoice #71664 indicates (allowing for a 20% discount) a unit price of $275.20. We note that the replacements from Spencer-Kennedy indicate a unit price of $204.75, according to Invoice #109110. Under the circumstances, Callais is entitled to recover the cost of these replacement items.
In recapitulation, we find a balance due Entron by Callais in the sum of $2,313.00 on Contract 1281; the sum of $14,160.16 on Contract 1330; the sum of $5,638.20 on open account, and the sum of $455.50 for the Intrudalarm system, a total indebtedness of $22,566.86. Applying the credit of $4,177.84 due Callais on its reconventional demand, we determine the net balance owed by Callais to Entron to be the sum of $18,389.02.
It is ordered, adjudged and decreed that the judgment of the trial court in favor of Entron, Inc. against Callais Cablevision, Inc. in the sum of $18,653.55, be and the same is hereby amended and revised to reduce said amount to the sum of $18,389.02, together with legal interest thereon from date of judicial demand until paid.
It is further ordered, adjudged and decreed that the right is reserved to Entron, Inc. to apply to the trial court for reimbursement of expenses incurred in making proof of matters concerning which it sought admissions of fact from defendant, Callais Cablevision, Inc., pursuant to LSA-C.C.P. art. 1514. All costs of these proceedings to be paid by defendant, Callais Cablevision, Inc.
Amended and rendered.