JiGREMILLION, Judge.
The plaintiff, Helena Chemical Company, appeals the judgment of the trial court dismissing its suit on open account against Adrion Nichols and Nichols & Nichols, Inc. Finding that the trial court committed manifest error, we reverse and render accordingly-[1]
FACTS
Helena filed separate suits against Adrion Nichols and Nichols & Nichols on May 27, 1994, to collect for agricultural merchandise sold on open accounts to defendants for the 1993 crop year. The Credit Sales Agreements signed by Nichols on his behalf and on the behalf of the corporation, Nichols & Nichols, provided for finance charges on unpaid balances, reasonable attorney fees if they do not pay the account, and all other costs of collection. At the time the suits were filed, |2Helena alleged in suit number 176,601 that under the agreement signed by Nichols on his behalf, there remains unpaid the sum of $36,853.68 subject to a credit of $5,679.01.[2] Helena also alleged in suit number 176,602 that under the agreement signed by Nichols on behalf of Nichols & Nichols, there remains unpaid the sum of $85,773.67 subject to a credit of $13,212.60.[3]
The two suits were consolidated on April 13, 1995, for the trial held on November 30, 1995. In the written reasons for judgment issued on February 6, 1996, the trial court found that Helena failed to establish that neither Adrion nor Nichols & Nichols received any of the products. The trial court wrote:
[t]he testimony and evidence fails to establish that Mr. Nichols & Nichols & Nichols, Inc. received the product allegedly delivered by Helena Chemical Company, other than the one invoice which was signed by Mr. Nichols and paid for by him. Helena Chemical Company presented numerous unsigned delivery tickets with no valid reason or explanation of why they were not signed. Their agent, Mr. James Philen, could not say who made the deliveries of the chemicals or where they were delivered. Mr. Nichols testified at the trial and denied receipt of the goods. Mrs. Nichols testified that no one ever came to her home and notified her that they were delivering chemicals to the barn/office locat *992 ed next to her home. Mr. Danny McCool, Adrion Nichols’ stepson and his employee, testified that they never received any of the chemicals from Mr. Philen or Helena Chemical Company. Mr. Mike Willis of Helena Chemical Company testified under cross that if there were an error on a delivery ticket and that delivery ticket had been generated into an invoice, then the invoice would be in error as well. It was not shown that any product was delivered to either Adrion Nichols or Nichols & Nichols, Inc., other that the goods referenced in the invoice signed by Mr. Nichols and paid for by him.
From this judgement, Helena appeals alleging that the trial court erred in failing to find that it met its burden of proof and in finding the testimony of Nichols credible.
I «OPINION
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Where documents or objective evidence so contradict the witness’ story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’ story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
Rosell v. ESCO, 549 So.2d 840, 844, (La.1989) (citations omitted) (emphasis added). After a review of the record in its entirety, we find that the trial court committed manifest error in finding that the evidence failed to establish that Nichols or Nichols & Nichols received the products.
The plaintiff, in an open account case, must make a prima facie showing of sales and delivery of the goods shown on the invoices. However, where the record shows that the plaintiffs business records and books were kept in the normal course of business and that they indicate that the merchandise was sold and delivered, the plaintiff need not prove actual delivery of each and every individual item. Entron, Inc. v. Callais Cablevision, Inc., 307 So.2d 787 (La.App. 1 Cir.1975). At the trial, Helena offered the testimony of James Philen, Paulette Johnson, Ronnie Andrus, and Mike Willis to prove its case.
James Philen, who owned and managed Alexandria Seed and Agricultural Services in 1993, testified that he began selling to Nichols in 1990 and sold to him on credit in the farming year 1993. He warehoused Helena’s products at his store and earned a commission from sales he generated. Philen prepared the shipping tickets for the Helena products he sold and Helena generated invoices from Uthese shipping tickets. He further testified that he or one of his employees delivered the products to one of the farms worked by Nichols. Philen also identified the shipping tickets issued by him to Nichols and stated that it was his normal business practice not to have the tickets signed by the receiver because the person receiving the products was normally working in the fields.
Paulette Johnson, a secretary for Helena in Bunkie, Louisiana, testified that her primary duties included generating invoices from delivery tickets received from dealers such as Alexandria Seed. She testified that a monthly statement would be generated from the invoices and mailed to the customers. She identified the invoices and the monthly statements that Helena mailed to Nichols.
Helena also offered the testimony of Ronnie Andrus, who, as warehouse manager for Helena during the 1993 farming year, was in charge of shipping, receiving, and making delivery tickets at Helena’s warehouse. He identified the tickets that were generated by him evidencing delivery to either one of the two farms worked by Nichols.
*993 Finally, Mike Willis, credit manager for Helena, testified that his main duties for Helena included reviewing credit applications and monitoring receivables. He identified the Credit Sales Agreements executed by Niehols on behalf of himself and Nichols & Nichols, and the monthly statements sent to Nichols. He further testified that the monthly statements were prepared at the corporate office and were part of Helena’s regularly kept business records.
Clearly, Helena was successful in making a prima facie case that Nichols was indebted to it. As such, the burden shifts to Nichols to prove lack of receipt or delivery. After reviewing the testimony and evidence presented by Nichols, we find that he falls far short in his attempt to prove that these products were not delivered. IgThe testimony of Nichols is plagued with implausibility and inconsistency, and further, the testimony of his wife, Doris Nichols, and step-son, Danny MeCool, is hardly convincing.
Nichols testified that he signed the Credit Sales Agreements with Helena on June 22, 1993. He stated that he quit doing business with Alexandria Seed after the beginning of July, 1993, and started using Valley Farmers Co-Op in Boyce. He first stated that he did not buy any chemicals from Helena in 1993, but then remembered that he did. Nichols said that he first became aware that Helena was billing him in October of 1993. He was not aware of the monthly statements that were sent to him, stating that “[m]y sister kept my stuff. I never did open a thing. And she come up with a big bill there and I hadn’t got the stuff. That’s when I was aware of it.”
Nichols further testified that Middle Bayou Spraying Company of Powhatan, Louisiana, did all of his aerial spraying for the 1993 farming year. That year he, including the entity Nichols & Nichols, farmed a total of approximately 3,100 acres on two farms, one in Rigolette and one in Boyce. He testified that his normal operating procedure, as far as the application of chemicals was concerned, was to pick up the chemicals on the day he was to use them stating that he would not buy them in advance.
When questioned by Helena during its case-in-chief, Nichols’ responses failed to approach any level of credibility. From the responses to requests for production of documents, Helena compiled a list of all the chemicals purchased by Nichols in 1993 and all of the chemicals sprayed by Middle Bayou for Nichols in 1993. This list shows that Nichols used certain products that Helena claims to have sold to him. However, Nichols denied that these products were acquired from | (¡Helena. He was asked several times by Helena if he could show any entry on the list indicating that he bought the product from another source. On each occasion, he could not produce any evidence indicating where the chemicals were bought. For example, when asked specifically about the application of the pesticide Karate by Middle Bayou, he responded that “[sjome of the chemicals I bought there was bought on the side that I paid cash money for ‘cause some salesman coming by there selling it.” Further detailing these covert chemical sales, Nichols stated “[a] lot time through the winter time different ones ... don’t ask me their names I don’t know it, I don’t ask them their name, they’ll come by and if it’s a pretty good deal on chemical, I’ll buy it.” Aside from the obvious self-serving nature of this testimony, he also contradicts his other statements that he only bought chemicals on the day he was to use them.
While the statement of'the trial court that “Mrs. Nichols testified that no one ever came to her home and notified her that they were delivering chemicals to the barn/offiee located next to her home” is a true representation of her testimony, it omits some important facts. Mrs. Nichols, a registered nurse, testified that during the 1993 farm year, she worked the night shift and did not get home until 8:00. a.m. In response to the question of whether she saw any chemicals delivered to their home, she responded, “I slept all day, I don’t know what went on at the barn.”
The testimony of MeCool is hardly reliable to prove lack of receipt or delivery of the chemicals because of his obvious lack of knowledge of the farming operation in that year. Despite the presence of documents and the uncontradicted testimony of Nichols *994 that Middle Bayou sprayed chemicals for him, McCool claimed that during the 1993 farming year, they only used a hi-boy to spray chemicals. Clearly, if he was unable to remember an airplane flying about spraying chemicals, hone must wonder if he would have been aware of the deliveries by Helena.
We, therefore, find that the documents and objective evidence so contradict Nichols’ story, and, further, that his testimony is so inconsistent and implausible on its face, that no reasonable factfinder could credit his story. So finding, we hold that the trial court committed manifest error and was clearly wrong; we now reverse that decision and find in favor of Helena.
When it has been determined that the trier of fact has committed manifest error, the appellate court is required to render a judgment on the merits if the complete record is before it. Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975), La. Const, art. V, § 10(B). As such, we have reviewed the entire record and find that the record provides sufficient evidence for us to render judgment. Based on the invoices[4] entered into evidence and the testimony of the witnesses for Helena, we find that Helena has proven that Nichols is indebted to it in the amount of $36,853.68, subject to a credit of $5,679.01 for a payment made on November 4, 1994. Further, we also find that Nichols & Nichols is indebted to Helena in the amount of $72,561.07 ($85,773.67, the amount prayed for, less the credits set forth in the petition of $13,212.60.)
La.Civ.Code art. 2000 provides that when the object of the performance of a contract is the payment of a sum of money, damages for delay in performance are measured by the interest on that sum fi’om the time it is due, at the rate of interest agreed upon by the parties. In this case, the parties agreed upon an annual interest rate of 18% in the Credit Sales Agreements. Helena is therefore entitled to interest in the amount of 18% per annum from the date the payments were due (30 days from the date of each monthly statement) until May 27, 1994, the date of judicial demand. _[gFrom that date, Helena is entitled to interest at the legal rate provided in La.Civ.Code art. 2924. See AcadiEnergy, Inc. v. McCord Explorar lion Company, 596 So.2d 1334 (La.App. 3 Cir.1992).
ATTORNEY FEES
It is well settled that attorney fees are not recoverable except where authorized by statute or contract. Ferrier v. Jordache-Ditto’s, 94-1317 (La.App. 3 Cir. 5/17/95); 662 So.2d 14, writ denied, 95-2865 (La.2/2/96); 666 So.2d 1100. La.Civ.Code art. 2000 provides that “[i]f the parties, by written contract, have expressly agreed that the obligor shall also be hable for the obligee's attorney’s fees in a fixed or determinable amount, the obligee is entitled to that amount as well.” In the Credit Sales Agreements, Helena and Nichols agreed that in the event that he failed to make payments, the account may be considered in default and Nichols would be responsible for all costs of collection, including reasonable attorney fees.
In support of its demand for attorney fees, Helena offered into evidence an affidavit in support of legal fees and costs in which counsel for Helena professed that the total legal fees and costs incurred by Helena were $13,053.00, less a $500.00 reimbursement by Nichols. Although La.Civ.Code art. 2000 permits the parties to a contract to stipulate the amount of the attorney fees recoverable, the court is not precluded fi’om reviewing the reasonableness of the claim for attorney fees. Brandner v. New Orleans Office Supply Center, Inc., 94-2534 (La.App. 4 Cir. 4/26/95); 654 So.2d 858, writ denied, 95-1298 (La.6/30/95); 657 So.2d 1039.
When determining the amount of attorney fees to be awarded, the court should consider the following factors: (1) the ultimate result obtained; (2) the extent and character of the work performed; (3) the responsibility incurred; (4) the number of court appearances made; (5) the intricacies of the facts involved; (6) the 19importance of the litigation; (7) the legal knowledge and skill of the attorneys; and (8) the diligence and skill of the attorneys. See State, DOTD *995 v. Williamson, 597 So.2d 439 (La.1992). Counsel for Helena sent numerous letters on behalf of his client, participated in several teleconferences, and conducted thorough discovery including requests for production of documents, interrogatories, and motions to compel. Additionally, counsel made several trips to Alexandria from Monroe for hearings, depositions, and the trial of this matter. Furthermore, the record reveals that counsel thoroughly prepared for both the trial and this appeal. Based on the record of these proceedings, we find an award of attorney fees of $12,553.00 to be reasonable, and therefore, award same.
CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed and judgment is rendered in favor of Helena Chemical Company and against Adrion Nichols for $36,-853.68 together with interest in the amount of 18% per annum from the date each of the payments were due until May 27, 1994, the date of judicial demand, and from that date, interest at the legal rate, subject to a credit of $5,679.01 for a payment made on November 4,1994. Likewise, judgment is rendered in favor of Helena Chemical Company and against Nichols & Nichols, Inc. for $72,561.07 together with interest in the amount of 18% per annum from the date each of the payments were due until May 27, 1994, the date of judicial demand, and from that date, interest at the legal rate. Helena is also awarded $12,500.00 for legal fees and costs. All costs of this appeal are taxed against the defendants, Adrion Nichols and Nichols & Nichols, Inc.
REVERSED AND RENDERED.
*996 APPENDIX
[[Image here]]
*997 [[Image here]]
*998 [[Image here]]
*999 [[Image here]]

. Prior to the trial, this case was consolidated with Helena Chemical Co. v. Nichols & Nichols, Inc., No. 176,602. Separate judgments were rendered in each case and both were appealed under docket numbers 96-856 and 96-857.

. Plaintiff alleges in its petition that defendant, Adrion Nichols, was indebted to it in the sum of $26,495.33 at 18% interest per annum from July 25, 1993, and $10,358.35 at 18% interest per annum from September 25, 1993, subject to a credit of $4,615.00 in principal and $1,063.06 in interest payments made on November 4, 1994.

.Plaintiff alleges in its suit that defendant, Nichols & Nichols, was indebted to it in the sum of $36,473.63 at 18% interest per annum from July 25, 1993; $39,230.89 at 18% interest per annum from August 25, 1993; and $10,069.15 at 18% interest per annum from November 25, 1993, subject to credits of $13,200.00 paid on September 14, 1993 and $12.60 paid on September 20, 1993.

. See the attached appendices for a complete listing of invoices and credits.