STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

13-1305

MC BANK AND TRUST CO., ET AL.

VERSUS

ELYSIAN ENTERPRISE, LLC, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20120460
HONORABLE KRISTIAN D. EARLES, DISTRICT JUDGE

**********

JIMMIE C. PETERS
JUDGE

**********

Court composed of Jimmie C. Peters, Billy Howard Ezell, and Phyllis M. Keaty, Judges.

AFFIRMED AS AMENDED.

James S. Broussard
Gabe A. Duhon, LLC
P. O. Box 478
Abbeville, LA 70511
(337) 893-3423
COUNSEL FOR DEFENDANTS/APPELLANTS:
    Elysian Enterprise, LLC
    Kenneth de la Vergne

**James R. Leonard, Jr.**
**P. O. Box 82367**
**Lafayette, LA 70598-2367**
**(337) 232-0823**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Succession of Ronald G. Brassueaux**

**Andrew Reed**
**Aycock, Horne & Coleman**
**P. O. Box 1700**
**Morgan City, LA 70381-1700**
**(985) 384-4523**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
**MC Bank and Trust Company**

**Louis Simon  II**
**Jones Walker LLP**
**P. O. Box 3408**
**Lafayette, LA 70502-3408**
**(337) 593-7600**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
**MC Bank and Trust Company**

**PETERS, J.**

The defendants, Elysian Enterprise, LLC and Kenneth de la Vergne, appeal the trial court's denial of a motion to continue the trial on the merits in this matter. For the following reasons, we amend the trial court judgment to increase the attorney fee award to $15,000.00 and affirm the judgment as amended.

## DISCUSSION OF THE RECORD

This litigation has as its origin a January *24*, 2012 petition for executory process filed by MC Bank & Trust Company (MC Bank), a St. Mary Parish bank, against Elysian Enterprise, LLC, a Lafayette, Louisiana limited liability company. In its petition, MC Bank sought the seizure and sale of Lafayette Parish immovable property belonging to Elysian Enterprise and mortgaged to MC Bank in exchange for loans totaling $225,839.10.[1] Based on a trial court order, the Lafayette Parish Clerk of Court issued a writ of seizure and sale to the Lafayette Parish Sheriff.

Elysian Enterprise answered the petition and reconvened against MC Bank asserting that the four promissory notes were executed by Ronald G. Brasseaux, who, although a part owner of Elysian Enterprise, executed the notes in his individual capacity. Thus, Elysian Enterprise asserted that it did not owe the indebtedness evidenced by the notes. In its answer and reconventional demand, Elysian Enterprise sought and obtained an order temporarily restraining MC Bank from moving forward with the executory-process sale.

MC Bank responded to the answer and reconventional demand on April 18, 2012, by amending its petition to proceed under ordinary process to collect on the four promissory notes and to enforce the underlying mortgage. In its amended

---

[1] The indebtedness secured by the mortgage is evidenced by four separate promissory notes dated July 20, 2010 ($60,075.00); September 17, 2010 ($85,614.10); November 4, 2010 ($20,075.00); and December 10, 2010 ($60,075.00). The executory process and ordinary process petitions reflect that at the time suit was filed, the principle on the $85,614.10 note had been paid down to $84,040.52. Therefore, the total principle amount due was $224,265.52.

petition, MC Bank named Mr. de la Vergne and the Succession of Ronald G. Brasseaux as additional defendants based on the existence of continuing guaranty agreements Mr. de la Vergne and Mr. Brasseaux executed in favor of MC Bank, wherein they each unconditionally guaranteed payment of the indebtedness of Elysian Enterprise.

On June 22, 2012, pursuant to MC Bank's motion, the trial court issued an order setting the matter for trial on November 26, 2012, as a fifth setting on that day's docket. In conjunction with that order, the trial court issued a scheduling order wherein it set deadlines for joining additional parties, divulging expert witnesses who may testify, amending pleadings, exchanging witness and exhibit lists, completing discovery, filing pretrial memoranda, marking and exchanging exhibits, filing objections to exhibits, and exploring settlement possibilities. The record before us reflects that MC Bank and the Succession of Brasseaux complied with the scheduling order to some extent by timely filing witness and exhibit lists in the record (MC Bank on September 27, 2010, and the Succession of Brasseaux on October 10, 2012).

The record reflects no steps by the remaining defendants to comply with the scheduling order. Instead, on November 19, 2012, counsel for Mr. de la Vergne and Elysian Enterprise filed a motion to withdraw as counsel of record and to continue the November 26, 2012 trial date. In that motion, he stated that Elysian Enterprise had notified him in writing on November 12, 2012, that it no longer required his services. He also stated in the motion that it was his opinion that an additional party needed to be added to the litigation and, therefore, "this case is not currently in a trial posture."

2

The trial court granted both the motion to withdraw and the motion for continuance by written order, but did not initially reset the matter for trial. On January 14, 2013, MC Bank filed a motion with the trial court requesting that the matter be reset. The trial court executed an order on that same day setting the matter for trial on April 1, 2013. On February 26, 2013, the trial court notified the parties that it would hold a pretrial conference on March 18, 2013.

In response to the pretrial-conference setting, MC Bank filed a five-page document on March 12, 2013, setting forth a series of facts which it proposed as either stipulations or as non-controversial to the issue; its lists of witnesses and exhibits; and the projected length of time of the trial. In its filing, MC Bank suggested that the only factual and legal issues remaining in the litigation evolved around the authority of Mr. Brasseaux in executing the promissory notes at issue and whether Elysian Enterprise had ratified the acts of Mr. Brasseaux. MC Bank supported this filing with a four-page pretrial memorandum containing eighteen attached exhibits. Neither the Succession of Brasseaux nor Mr. de la Vergne/Elysian Enterprise filed anything in response to the pretrial-conference setting.

On April 1, 2013, Mr. de la Vergne appeared for trial in proper person and orally requested a continuance based on his failure to hire counsel. Specifically, Mr. de la Vergne informed the trial court that it had been impossible for him to retain counsel. He stated that of the five attorneys he had approached for representation, three had conflicts and two declined to represent him because they had insufficient time to prepare for the scheduled trial. When counsel for MC Bank objected to the continuance based on the circumstances of the previous continuance (firing the trial counsel two weeks before trial) and the fact that

3

months had passed since that lawyer was released without him retaining counsel, Mr. de la Vergne responded, "I tried before. I told y'all I had medical issues, lots of surgeries, and I was not able to drive even to see him."

The trial court denied the continuance and the matter proceeded to trial on the merits. Following the presentation of evidence, the trial court rendered judgment against the three defendants for the amounts evidenced by the promissory notes together with interest, recognized and maintained the mortgage executed by Elysian Enterprise in favor of MC Bank, and awarded MC Bank $5,000.00 in attorney fees. On April 18, 2013, the trial court executed a judgment in conformity with its ruling on the merits. Among other motions, Mr. de la Vergne's new counsel filed a motion for new trial which the trial court rejected as not having been timely filed.

Mr. de la Vergne perfected this appeal, asserting that (1) the trial court erred in not granting him a continuance, and (2) he should be granted a new trial in the interests of justice. MC Bank answered Mr. de la Vergne's appeal arguing that the trial court erred by awarding it only $5,000.00 in attorney fees and that the award should be increased to $44,178.22.

**OPINION**

*Continuance Issue*

The mandatory grounds for the grant of a motion for continuance are found in La.Code Civ.P. art. 1602, which provides:

> A continuance shall be granted if at the time a case is to be tried, the party applying for the continuance shows that he has been unable, with the exercise of due diligence, to obtain evidence material to his case; or that a material witness has absented himself without the contrivance of the party applying for the continuance.

4

The grant or denial of all other motions for continuance are subject to the discretionary grounds of La.Code Civ.P. art. 1601, which simply provides that "[a] continuance may be granted in any case if there is good ground therefore."

Additionally:

> The trial court has wide discretion in ruling on a motion for continuance, and that ruling will not be disturbed absent a clear showing of abuse of discretion. *Succession of Stark*, 06-190 (La.App. 3 Cir. 7/5/06), 934 So.2d 901 (citing *Sauce v. Bussell*, 298 So.2d 832 (La.1974)). The decision to grant or deny a continuance is dependent on the facts of the case and may include consideration of such factors as diligence, good faith, reasonable grounds, fairness to both parties, and the need for the orderly administration of justice. *Ardoin v. Bourgeois*, 04-1663 (La.App. 3 Cir. 11/2/05), 916 So.2d 329. Another factor which may be considered is the defendant's right to have his case heard as soon as practicable. *Gilcrease v. Bacarisse*, 26,318 (La.App. 2 Cir. 12/7/94), 647 So.2d 1219, *writ denied*, 95-421 (La.4/30/95), 651 So.2d 845 (citing *Lambert v. Heirs of Adams*, 325 So.2d 331 (La.App. 3 Cir.1975), *writ denied*, 329 So.2d 458 (1976)). "However, this discretion may not be exercised arbitrarily, where a denial of a continuance founded on a good-faith ground may deprive a litigant of his day in court." *Powell v. Giddens*, 271 So.2d 596, 597 (La.App. 1 Cir.1972).

*Succ. of Harrell v. Erris-Omega Plantation, Inc.*, 12-696, pp. 7-8 (La.App. 3 Cir. 12/5/12), 104 So.3d 751, 757.

In his brief to this court, Mr. de la Vergne attempts to provide this court with his personal medical history between the original November 2012 trial date and the April 1, 2013 trial. At trial, his only reference to his medical situation is that which has been previously cited, and, although he suggests to this court that the issue was discussed extensively at the March 18, 2013 pretrial conference, nothing in the record supports that assertion. This court cannot consider on appeal any evidence not officially offered and introduced into the record at the trial level. *See Adams v. Allstate Ins. Co.*, 01-1244 (La.App. 5 Cir. 2/26/02), 809 So.2d 1169. Considering

5

only the record properly before us, we find no abuse of the trial court's wide discretion in its denial of Mr. de la Vergne's motion for continuance.

*New Trial Issue*

In his motion for new trial, Mr. de la Vergne asserted that the trial court should grant the motion "in the interest of justice because there is good ground therefor" and cites La.Code Civ.P. art. 1973 as authority for the grant.[2] Louisiana Code of Civil Procedure Article 1973 provides that "[a] new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law."

With regard to the filing of a motion for new trial, La.Code Civ.P. art. 1974 provides:

> The delay for applying for a new trial shall be seven days, exclusive of holidays. The delay for applying for a new trial commences to run on the day after the clerk has mailed, or the sheriff has served, the notice of judgment as required by Article 1913.

The trial court signed the judgment at issue in this appeal on April 18, 2013, and the Clerk of Court mailed the notice of judgment to Mr. de la Vergne on Thursday, May 9, 2013. Thus, Mr. de la Vergne had until Monday, May 20, 2013, in which to file his motion for new trial. On that day, Mr. de la Vergne's new counsel filed a motion for new trial by facsimile transmission and, at the same time, filed a written request, by facsimile transmission, asking the trial court to provide its findings of fact and reasons for judgment in this matter.

With regard to the facsimile transmission of pleadings for filing, La.R.S. 13:850 provides:

> A. Any paper in a civil action may be filed with the court by facsimile transmission. All clerks of court shall make available for

---

[2] This ground was actually an alternate ground in the motion for new trial. The primary grounds were that the judgment was contrary to the law and evidence and that Mr. de la Vergne had discovered new evidence which could not have been discovered with due diligence before or during trial. He cites La.Code Civ.P. art. 1972 as authority for this relief. However, he does not raise these grounds on appeal.

6

their use equipment to accommodate facsimile filing in civil actions. Filing shall be deemed complete at the time that the facsimile transmission is received and a receipt of transmission has been transmitted to the sender by the clerk of court. The facsimile when filed has the same force and effect as the original.

    B.  Within seven days, exclusive of legal holidays, after the clerk of court has received the transmission, the party filing the document shall forward the following to the clerk:

    (1)  The original signed document.

    (2)  The applicable filing fee, if any.

    (3)  A transmission fee of five dollars.

    C.  If the party fails to comply with the requirements of Subsection B, the facsimile filing shall have no force or effect. The various district courts may provide by court rule for other matters related to filings by facsimile transmission.

    D.  The clerk may purchase equipment and supplies necessary to accommodate facsimile filings out of the clerk's salary fund.

On May 29, 2013, Mr. de la Vergne's new counsel filed the original signed motion for new trial with the clerk of court. Thus, he complied with the seven-day filing requirement of La.R.S. 13:850(B).[3] However, neither the facsimile transmission nor the original of the motion for new trial had an order attached for the trial court to execute.

Mr. de la Vergne's new counsel supplied the trial court with an order for its signature by facsimile transmission to the clerk of court on Tuesday, June 25, 2013. On that same day, the trial court wrote "Denied No order and untimely" across the last page of the original motion (not the faxed order) and affixed his signature and the date below the handwritten notation.[4] However, two days later on June 27,

---

[3] The other requirements of La.R.S. 13:850(B) are not at issue in this appeal.

[4] This handwritten notation is found in the record immediately after the cover letter and order which comprised the facsimile transmission. However, neither the page containing the handwritten denial nor the cover letter and order contain a time stamp to suggest the timing of the denial versus the facsimile transmission.

7

2013, a duty judge executed the original order and set a show-cause hearing for August 5, 2013.  This was followed by a July 9, 2013 letter from the trial judge to the clerk of court, which stated in pertinent part:

> Please disregard the Order granting a hearing on August 5, 2013, in the above matter.  It was signed on June 27, 2013, by the duty Judge.  This should have been routed to Division "J".  If copies have gone out, please sent [sic] a notice that it is not effective.

Based on the provisions of La.R.S. 13:850, we find that the trial court erred in finding that the motion for new trial was not timely filed.  However, that was only part of the trial court's reasons for denying the motion without setting it for a hearing as it also noted that the filing did not contain an order.  With regard to the failure of a litigant to attach an appropriate order, La.Dist.Ct.R. 9.8(a) (emphasis added) provides in pertinent part:

> **Contradictory Exceptions and Motions.**  All exceptions and motions, including those incorporated into an answer, *shall* be accompanied by a proposed order requesting that the exception or motion be set for hearing.  If the exceptor or mover fails to comply with this requirement, the court *may strike the exception or motion*, may set the matter for hearing on its own motion, or take other action as the court deems appropriate.

In this case, the motion was not accompanied by a proposed order and that order was not provided until thirty-six days later.  While it is unclear from the record whether the trial court rejected the motion for new trial before or after the supplement order was filed by facsimile transmission, it is clear that the order was not provided within the time period for filing the motion.  The trial court used one of the three courses of action provided for in La.Dist.Ct.R. 9.8(a) and dismissed the motion.  We find no merit in this assignment of error.

*Attorney Fee Issue*

In its answer to the appeal, MC Bank sought an increase in the attorney fee award from $5,000.00 to $44,178.22.

The promissory notes sued upon provide for the recovery of "reasonable attorneys' fees in an amount not exceeding 25.000% of the principal balance due on the loan[s]." At trial, MC Bank requested an attorney fee award of twenty-five percent of the principal balance, and counsel for the Succession of Brasseaux objected to it being set at that amount. The trial court responded to the objection by stating, "I'll set those as what I believe is reasonable." At the end of the trial, the trial court orally granted MC Bank judgment as prayed for on all issues except the attorney fees. With regard to that issue, the trial court noted, "I will wait for your affidavit of attorney fees."

Counsel for MC Bank did not provide the trial court with an affidavit. Instead, on April 9, 2013, he provided the trial court with a proposed judgment and copies of invoices representing services rendered to MC Bank attached to a letter, wherein he noted that twenty-five percent of the principal balance would be $56,036.48 and that MC Bank had incurred $44,278.22 in attorney fees.[5] When the trial court executed the proposed judgment, it struck through the $44,278.48 figure and inserted the sum of $5,000.00 as the attorney fee award.[6]

As stated in *Helena Chemical Co. v. Nichols*, 96-856, pp. 8-9 (La.App. 3 Cir. 12/26/96), 695 So.2d 990, 994, *amended on reh'g on other grounds*, 96-856, 96-857 (La.App. 3 Cir. 1/29/97), 695 So.2d 1000:

> When determining the amount of attorney fees to be awarded, the court should consider the following factors: (1) the ultimate result obtained; (2) the extent and character of the work performed; (3) the responsibility incurred; (4) the number of court appearances made; (5) the intricacies of the facts involved; (7) the legal knowledge and the skill of the attorneys; and (8) the diligence and skill of the attorneys.

---

[5] The letter and proposed judgment was filed on April 18, 2013. The judgment bears the trial court's signature and is dated April 15, 2013.

[6] In its subsequent reasons for judgment, the trial court did not mention the attorney fee award or the basis for awarding less than the requested amount.

9

Because the record before us does not contain any admissible evidence concerning the attorney fee issue, we must consider these factors in determining whether the trial court erred in awarding only $5,000.00. In doing so, we recognize that MC Bank's attorneys were successful in obtaining the ultimate result initially sought although this required that they convert their original executory-process action to an ordinary action. As to the character of the work performed, we find nothing extraordinarily complicated about a suit on promissory notes secured by a mortgage on immovable property, and the litigation required only one court appearance and a number of appearances involving pretrial matters. We find that the facts underlying the litigation were not necessarily complicated, and, while certainly important to the litigants, the litigation itself carried no special meaning. Finally, MC Bank's attorneys exhibited superior legal knowledge of the issues as they arose and were diligent and skillful in their representation.

Considering all of these factors and, without the benefit of any other admissible evidence, we do find that the attorney fee should be increased to $15,000.00.

## DISPOSITION

For the foregoing reasons, we amend the trial court judgment in favor of MC Bank and Trust Company and against Elysian Enterprise, LLC, Kenneth de la Vergne, and the Succession of Ronald G. Brasseaux to increase the attorney fee award from $5,000.00 to $15,000.00 and affirm the judgment as amended. We assess all costs of this appeal to Elysian Enterprise, LLC and Kenneth de la Vergne.

**AFFIRMED AS AMENDED.**

10